TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-96-00637-CR






Harvey Galan Fierro, Appellant



v.



The State of Texas, Appellee







FROM THE COUNTY COURT AT LAW NO. 5 OF TRAVIS COUNTY


NO. 412,435, HONORABLE WILFRED AGUILAR, JUDGE PRESIDING







 A jury convicted Harvey Galan Fierro of driving while intoxicated. See Tex. Penal Code
Ann. § 49.04 (West 1994 & Supp. 1998). He elected to have the trial court assess his punishment. The
trial court sentenced him to a $1000 fine and confinement in the county jail for a period of ninety days, but
probated the confinement and $700 of the fine for two years. Fierro appeals his conviction by two points
of error, complaining of the trial court's admission of a videotape taken shortly after Fierro's arrest and in
granting the State's challenge for cause of a prospective juror. We will affirm the conviction.


BACKGROUND

 In the predawn hours of March 21, 1994, a deputy sheriff observed Harvey Galan Fierro
driving his vehicle over the speed limit and weaving in and out of his lane of traffic. The deputy stopped
Fierro and observed that Fierro exhibited characteristics typical of an intoxicated person. The deputy
arrested Fierro and transported him to the City of Austin police station. 

 At the station, the deputy asked Fierro to give a breath specimen. Fierro refused. Fierro
also refused to perform sobriety tests, stating he wished to speak to an attorney and did not want to make
any statements without one. After Fierro made this statement, the deputy asked Fierro if he wished to
waive his rights and make a statement. Fierro refused to respond. These communications, which occurred
over an approximately twenty-minute period, were videotaped. 

 The State charged Fierro by information with the offense of driving while intoxicated. 
Fierro filed a general motion to suppress evidence, which included the videotape recorded at the station. 
Fierro argued the trial court should suppress the tape because it revealed his repeated invocation of his right
to counsel, and because the deputy did not honor Fierro's election to remain silent after he unequivocally
invoked his right to counsel. The record reveals that the trial court held three pretrial hearings on the motion
regarding the admissibility of the tape. No signed order appears in the clerk's record. However, the
docket sheet, signed by the judge, indicates that the trial court suppressed the audio portion of the tape. 
It also indicates the State agreed to this order. Furthermore, the reporter's record reveals that the trial
court suppressed the audio portion at a pretrial hearing and that the State agreed.

 At trial, Fierro again objected to the trial court's refusal to suppress the video portion of
the tape. Fierro further argued that showing the tape with no audio would prejudice him more than simply
showing the entire tape with audio. Fierro contended the trial court should either suppress the entire tape
or admit the entire tape, but not admit the video portion without audio. He argued that if (and only if) the
court persisted in its decision to admit the video portion of the tape, the court should admit the audio as
well. The court then stated its decision to admit the entire tape, audio included. 

 The State proceeded to present its case and indicated its intent to play the tape before the
jury. At that time, Fierro stated he had "no objection" to the admission of the tape. However, immediately
after this statement, the court removed the jury from the courtroom and acknowledged Fierro's intent to
"put something on the record." Both Fierro and the court then alluded to the prior discussion about the
admissibility of the tape. Following this discussion, the court allowed the State to play the tape, both audio
and video, before the jury. 

 After hearing the State's entire case, the jury convicted Fierro of driving while intoxicated. 
See Tex. Penal Code Ann. § 49.04. Fierro appeals by two points of error. He contends the trial court
erred in refusing to suppress the entire tape, including both audio and video portions. He also contends
the trial court erred in dismissing a prospective juror upon the State's challenge for cause.


DISCUSSION

Admissibility of Videotape

 Audio tape evidence of a defendant invoking his right to counsel is not admissible as
evidence of guilt of driving while intoxicated. Hardie v. State, 807 S.W.2d 319, 322 (Tex. Crim. App.
1991) (citing Miffleton v. State, 728 S.W.2d 880, 884 (Tex. App.--Austin 1987), aff'd, 777 S.W.2d
76 (Tex. Crim. App. 1989)). The audio portion of the tape reveals: (1) Fierro repeatedly stating his desire
to remain silent until he speaks with an attorney and (2) the officer subsequently asking Fierro questions
designed to elicit incriminating testimonial statements. For instance, the officer asked Fierro if he had been
drinking alcoholic beverages, what kind, and how many. Fierro refused to answer these questions. 
Presumably for these reasons, the trial court granted Fierro's motion to suppress the entire audio portion
of the tape. Fierro does not quarrel with the trial court's decision to suppress the audio portion. He did,
however, conditionally waive his objection to the admissibility of the audio portion once it became apparent
that the trial court intended to admit the video portion of the tape. He argues that the trial court's allegedly
erroneous decision to admit the video portion compelled him to agree to admission of the audio portion as
well.

 The crux of Fierro's argument, then, is that the trial court erred in refusing to suppress the
video portion of the tape. The State proffers several arguments suggesting that Fierro did not preserve this
issue for our review. 

 First, the State argues Fierro limited his original motion to suppress the audio portion of the
tape. We disagree. Fierro filed a general motion to suppress evidence that included, among many other
things, the entire tape. His argument at the pretrial hearings on the motion suggested his main objection to
admitting the tape concerned the audio portion. However, he maintained his objection to the admissibility
of the video portion through the final pretrial hearing on his motion to suppress.

 Second, the State contends Fierro failed to obtain a ruling on his pretrial motion. The
docket entry, signed by the judge, and the reporter's record of the final hearing on the motion reveal the
trial court ruled on the motion. See Tex. R. App. P. 33.1(c) (formerly Rule 53); Flores v. State, 888
S.W.2d 193, 195 (Tex. App.--Houston [1st Dist.] 1994, pet. ref'd) (signed docket entry evidences trial
court's ruling on motion to suppress evidence); cf. Haley v. State, 811 S.W.2d 600, 602 (Tex. Crim.
App. 1991) (holding court of appeals erred in affirming trial court's ruling on motion to suppress when
record, including statement of facts, did not evidence trial court's ruling on motion). In any event, early in
the trial Fierro clearly articulated his objection to admitting the video without audio, and the court then
alluded to and reiterated its prior ruling on the pretrial motion.

 Third, the State contends Fierro waived his objection later at trial by affirmatively stating
he had "no objection" to the admission of the tape. When a court overrules a pretrial motion to suppress
evidence, the defendant need not subsequently object to the admission of the same evidence at trial to
preserve error. E.g., Harris v. State, 656 S.W.2d 481, 485 (Tex. Crim. App. 1983). However, the
defendant waives his pretrial objection if he affirmatively asserts at trial that he has no objection to the
admission of the evidence. Id. 

 The State acknowledged at oral argument that the trial court apparently believed that Fierro
had preserved his complaint for our review. Moreover, the State misconstrues the events that occurred
at trial. Fierro did not simply say "no objection" when the State presented the tape. It is apparent from
the record that immediately after Fierro stated he had "no objection," or contemporaneously with his
statement, he did something to indicate he really did have an objection. After Fierro uttered the words "no
objection, Your Honor," the trial court sent the jury out of the courtroom and acknowledged that Fierro
"wanted to put something on the record." Fierro then alluded to his previous objection and indicated his
intent "to preserve error." He made these statements before the tape was played to the jury, immediately
after the State presented the videotape for admission in evidence. Taking Fierro's statements in the context
of the entire record, we conclude Fierro did not waive the alleged error by initially uttering in the presence
of the jury that he had "no objection" to the admissibility of the videotape.

 We conclude that Fierro preserved his objection to the admission of the video portion of
the tape. Fierro believed that the trial court had committed error in denying his efforts to suppress the
introduction of the videotape in its entirety. He was not "required to stand on his objection, to his
prejudice, and hope that the trial court's [perceived] error was reversible on appeal." Sontag v. State,
841 S.W.2d 889, 892 (Tex. App.--Corpus Christi 1992, pet. ref'd).

 Next, the State contends Fierro failed to present a sufficient record for this Court to review
the merits of his claim. The State directs our attention to two portions of the reporter's record that reveal
the tape was stopped twice while the State presented it to the jury. The State suggests we conclude that
some portions of the tape were not played to the jury, and that Fierro cannot establish harm because he
cannot establish exactly which portions of the tape the jury viewed.

 We infer from the record that the jury considered the entire tape. The relevant portion of
the reporter's record reads as follows:


[BY THE COURT]: Let him sit in that first chair over there.


(Videotape was played.)


 Okay. Stop it.


(Videotape stopped.)


 Move it as close as you can to the jury. Deputy, why don't you come
around and, if you would, stand where [defense counsel] is. If you can
see it from there, fine, you're okay. If not, then why don't you come
around here.


(Videotape was played.)


 Just a minute. Put it on pause.


(Videotape stopped.)



 Go ahead.


(Videotape was played.)


This suggests the tape was stopped so the playing device could be moved to the optimal viewing location
for the jury, and so the officer could move to see it as well. Nothing in the record suggests parts of the tape
were omitted. We, therefore, conclude the tape was played in its entirety.

 Having held that Fierro preserved his objection to the admission of the video portion of the
tape and that the record before us is sufficient to review the merits of Fierro's claims, we address the
State's suggestion that Fierro himself cured any error with respect to admission of the tape by ultimately
agreeing to the admission of the entire tape in evidence. Fierro contends that the trial court's decision to
play the video portion forced him to agree to the playing of the audio. He relies upon the corollary to the
doctrine of curative admissibility in arguing he did not cure the alleged error. 

 According to the doctrine of curative admissibility, if the court erroneously admits evidence,
but the defendant introduces the same evidence through some other means, the error is cured. E.g.,
Sweeten v. State, 693 S.W.2d 454, 456 (Tex. Crim. App. 1985); Bush v. State, 697 S.W.2d 397, 404
(Tex. Crim. App. 1985). The corollary to this doctrine is that a defendant does not cure the alleged error
if the rebuttal evidence does not confirm the truth of the erroneously admitted evidence, but is designed to
meet, destroy, or explain it. Id.

 Neither the doctrine nor its corollary applies to the situation presented here. Whether a
defendant's action cures the erroneous admission of evidence is relevant only if the court in fact erroneously
admits evidence. See Sweeten, 693 S.W.2d at 456. As explained below, we conclude the trial court did
not err in ruling the video portion of the tape was admissible.

 We review the trial court's decision not to suppress evidence for an abuse of discretion. 
Williams v. State, 535 S.W.2d 637, 639-40 (Tex. Crim. App. 1976). We first note that a visual
depiction of a defendant arrested for driving while intoxicated does not constitute testimonial evidence
compelled in violation of the defendant's federal or state constitutional rights to remain silent and to have
an attorney.


[W]hen a suspect invokes his right to counsel under Miranda, the police are not forbidden
from seeking the suspect's breath sample. Likewise, we conclude that when a suspect
invokes his right to counsel under Miranda, the police are not prohibited from obtaining
video recordings of the suspect performing sobriety tests. Visual depictions of a suspect's
physical condition, like samples of blood, breath, or handwriting, are not testimonial in
nature and do not fall within the federal or state privileges against self-incrimination.


Miffleton, 777 S.W.2d at 81; Townsend v. State, 813 S.W.2d 181, 186 (Tex. App.--Houston [1st
Dist.] 1991, pet. ref'd). The officer could have testified to Fierro's physical condition after arrest;
therefore, the visual recording of his physical condition is also admissible. See Miffleton, 777 S.W.2d at
80.

 Fierro does not acknowledge this well-established rule. He simply contends that showing
the video without sound would prejudice him. He intimates that the video portion is inadmissible because
it, like the audio portion, evidences his repeated invocation of his right to counsel. He suggests that the
visual depiction of him in the police station is just as "testimonial" or "communicative" as an audio tape of
his spoken words. This contention contradicts the above well-established precedent. 

 Fierro does not articulate how this case is different from the others in which courts have
indicated the propriety of presenting silent video depictions of defendants recorded after the defendants
have invoked their constitutional rights. See, e.g., Hardie, 807 S.W.2d at 322; Miffleton, 777 S.W.2d
at 81-82. We have reviewed the entire tape and, like the trial court, fail to see anything incriminating about
the video portion. The video portion alone does not reveal that Fierro had asserted his rights to an attorney
and to remain silent. For the most part, it depicts Fierro standing still for about twenty minutes. Several
times Fierro gestures with his hands, looks at papers the officer gives him, and speaks to the officer. 
However, the substance of the limited conversation between Fierro and the officer is not at all apparent
from the silent video. In fact, Fierro appears very calm and collected on the video. The trial court could
easily have viewed this visual depiction of his physical state after arrest as exculpatory.

 We hold that the trial court did not abuse its discretion in refusing to suppress the video
portion of the tape. As the trial court properly admitted the video portion, Fierro could not have been
compelled to agree to the admission of the audio portion and his prior conditional waiver became an
absolute waiver of his objection to the admission of the audio portion. Accordingly, we overrule Fierro's
point of error on this issue.

Challenge for Cause

 Fierro also complains that the trial court erred in granting the State's challenge for cause
levied against prospective juror Sustaita. A member of the jury panel is subject to challenge for cause if
he or she demonstrates bias or prejudice against any phase of the law upon which the State is entitled to
rely. Tex. Code Crim. Proc. Ann. art. 35.16(b)(3) (West Supp. 1998). When a challenged prospective
juror is shown to be biased as a matter of law, the trial court must dismiss the person, even if the person
states he or she can set the bias aside. E.g., Green v. State, 840 S.W.2d 394, 404-05 (Tex. Crim. App.
1992). The trial court has discretion to determine whether the prospective juror is biased in the first place. 
Id. Because the trial court is in the best position to evaluate the demeanor of a prospective juror, we
review a trial court's determination of a challenge for cause only for clear abuse of discretion. Cantu v.
State, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992), cert. denied, 113 S. Ct. 3046 (1993). That is to
say, we reverse "only when the trial judge's decision was so clearly wrong as to lie outside that zone within
which reasonable persons might disagree." Kemp v. State, 846 S.W.2d 289, 297 (Tex. Crim. App.
1992).

 The court of criminal appeals has elaborated upon the standard of review we apply under
these circumstances.


In reviewing a decision by the trial judge to sustain a challenge for cause, the standard of
review is whether the totality of the voir dire testimony supports the trial judge's implied
finding of fact that the prospective juror is unable to take the requisite oath and follow the
law as given by the trial judge. Goodwin v. State, 799 S.W.2d 719, 731 (Tex. Cr. App.
1990). Moreover, when analyzing the propriety of a trial judge's decision to sustain a
challenge for cause, the reviewing court must recognize that it is faced with only a cold
record. Perforce, when undertaking an abuse of discretion review, the juror's bias need
not be proven with "unmistakable clarity" . . . .



Cantu, 842 S.W.2d at 682; see Broxton v. State, 909 S.W.2d 912, 916 (Tex. Crim. App. 1995).

 In reviewing the trial court's exercise of its discretion in a particular case, we review the
totality of the relevant voir dire examination. Kemp, 846 S.W.2d at 299. The relevant portion of the voir
dire examination of Sustaita occurred when the defense was discussing the various ways to prove
intoxication and is as follows:


[BY DEFENSE COUNSEL]: The evidence of not having the normal use of your mental
and physical faculties may come to you in the form of testimony. In other words, if I said,
Mr. Sustaita, I believe you've lost the normal use of your mental and physical faculties. 
That's all the evidence that you need. Wouldn't you agree with me that I think you're
intoxicated.


A: I can easily understand what -- I think anybody can see what a drunk is. But to be
intoxicated, I think that -- man, I've seen a lot of people that get drunk off of three
beers. There's another guy that can drink 12 beers and still look straight.


 I think intoxication is definitely a hard thing to determine. Drunk is one thing. I can
tell somebody who is drunk, slurring, you know, their words, not walking straight. 
But when it comes to being intoxicated, I think it's just a personal judgment basically. 
And that is real hard to define. For me, the only thing that would define
intoxication would be a Breathalyzer test.


Q: What about a police officer's opinion -- in my opinion, you were intoxicated?


A: I guess, from what I've seen, they're trained to spot people that are intoxicated. I
guess -- that's a tough one for me, to be honest with you.



(Emphasis added.) The State challenged Sustaita for cause. The court called him to the bench and allowed
both lawyers to question him. The following colloquy ensued:


[BY THE PROSECUTOR]: You stated at one point during voir dire that the only way
you could determine if someone was intoxicated is if there had been an Intoxilyzer
administered; is that correct?


A. Yes.


Q: So there's no way you could find someone intoxicated or find that they were
intoxicated based on any other evidence without the Intoxilyzer?


A: To me, it would be very difficult because, like I said, from my experience, I have seen
people get drunk on three beers and you can't really tell if they're drunk.


Q: So if the State cannot produce an Intoxilyzer test for you, you would have a difficult
time finding someone guilty based on what the other evidence is?


A: Not really. Like what you also pointed -- you know, I would have to have all the
facts because also the other side, too, about the policeman being a professional and
that would also come out in his testimony. There's a lot of factors. But for me, I
would weigh more on the Breathalyzer.



(Emphasis added.) The trial court intervened and questioned Sustaita:


[BY THE COURT]: Let me ask you this: I understand that you'd like to see a
Breathalyzer test result, but if it's not there, can you make a decision based on the
evidence that's left?


A: Sure.


Q: Or would it be impossible for you to find somebody guilty if there was no Intoxilyzer
test?


A: No, I wouldn't say impossible.


Q: What do you mean? In other words, one officer's testimony alone is not sufficient
even if you believe the officer?


A: Yes. I guess all I'm saying -- 


* * *


 Yeah, just basically -- I mean, I could decide -- I mean, I could decide. It just
depended on the police officer.


* * *


Further questioning by counsel ensued:



[BY THE PROSECUTOR]: You've heard me talk about the burden of proof. You've
heard [defense counsel]. Do you think the burden of proof is higher for the state
without the Breathalyzer test?


A: Yeah.


[BY DEFENSE COUNSEL]: Is it going to cause -- Mr. Sustaita, let's say that the police
officer got up on a witness stand and testified and he said that the person was intoxicated,
and there's no doubt in your mind you believe every word he says; in other words, he's
absolutely believable to you 100 percent.


The case does not have an Intoxilyzer or breath test, but you believe him beyond a
reasonable doubt. You look at the definition and that person shows you he's guilty or not
guilty. Could you decide the case based on believable testimony? If believe him [sic], then
could you decide the case?


A: I could.


* * *



(Emphasis added.) The trial court then sustained the State's challenge for cause:



[BY THE COURT]: I'm going to grant it. . . . Basically he said the standard would be
higher without it -- without a breath test, and it is the same standard whether there is or
isn't, so I'm going with that. That, to me, was relevant.



 Fierro argues the court erred in granting the State's challenge for cause because Sustaita
did not say he would hold the State to a higher standard of proof without a breath test, but said the State
might bear a higher burden of proof. He paraphrases Sustaita's statements as expressions of a belief that,
as a practical matter, the State might have a more difficult time proving a defendant was intoxicated if the
State does not have the results of a breath test at hand.

 The opinion testimony of an officer, standing alone, is legally sufficient to prove intoxication. 
Irion v. State, 703 S.W.2d 362, 364 (Tex. App.--Austin 1986, no pet.) (citing Annis v. State, 578
S.W.2d 406, 407 (Tex. Crim. App. 1979)). A juror is free, however, to determine what constitutes a
reasonable doubt and may require more than the testimony of a single witness before finding a fact proved
beyond a reasonable doubt. See Zinger v. State, 932 S.W.2d 511, 514-16 (Tex. Crim. App. 1996);
Garrett v. State, 851 S.W.2d 853 (Tex. Crim. App. 1993). Therefore, a trial court may not dismiss a
juror for cause for expressing a belief that a single witness's testimony can never establish a fact beyond
a reasonable doubt. Id. On the other hand, if a juror expresses that he or she will require more than proof
beyond a reasonable doubt, the court must dismiss the juror for cause. Id.

 Sustaita's answers, when considered in their entirety, support the trial court's finding that
Sustaita had a bias against a phase of the law on which the State was entitled to rely, to wit: he would
require a higher level of proof of intoxication than the law requires by being unable to convict in the absence
of a breath test. He stated so on several occasions during voir dire. We cannot say that faced with such
statements the trial court clearly abused its discretion by sustaining the State's challenge of Sustaita for
cause. 

 Moreover, Sustaita's answers reflect that at best he was vacillating or equivocal. When
a prospective juror "vacillates or equivocates in [his or her] ability to follow the law, the reviewing court
must defer to the trial court's judgment." Brown v. State, 913 S.W.2d 577, 580 (Tex. Crim. App. 1996)
(citing Riley v. State, 889 S.W.2d 290 (Tex. Crim. App. 1993)). Sustaita, in answers to questions by
defense counsel, first said only a breath test would define intoxication for him. When asked about a police
officer's opinion of intoxication, he recognized that police officers were trained to spot intoxicated people,
but said "that's a tough one for me, to be honest with you." When questioned by the State, he confirmed
that he could determine intoxication only if there was breath test evidence and that it would be "very
difficult" to find intoxication based on evidence other than a breath test. He then indicated that he would
consider other factors, but "would weigh more" on a breath test. However, in response to inquiries by the
trial court, he said it would not be "impossible" to find a person guilty without a breath test. He went on
to say that the testimony of one police officer alone would not be sufficient proof, but qualified his answer
by saying it would depend on the officer. Upon further questioning by the State, he stated that he thought
the State's burden was higher without a breath test. Finally, he responded to defense counsel that he could
decide the case on believable testimony without a breath test.

 These are circumstances under which we owe deference to the trial court. "When the
potential juror's answers are vacillating, unclear, or even contradictory, the trial judge's superior point of
view is particularly important and deserving of our deference." Rachal v. State, 917 S.W.2d 799, 810
(Tex. Crim. App. 1996) (citing Cantu, 842 S.W.2d at 682); see also Howard v. State, 941 S.W.2d 102
(Tex. Crim. App. 1996). Because the trial court could reasonably have concluded that Sustaita could not
follow a legal principle upon which the State was entitled to rely or that Sustaita was vacillating or equivocal
on this issue, we hold that the court did not abuse its discretion in granting the State's challenge for cause. 
We overrule Fierro's point of error on this issue.

CONCLUSION We conclude that: Fierro preserved his complaint regarding the admissibility of the video
portion of the tape; the trial court did not err in refusing to suppress the tape; and the trial court did not err
in dismissing one of the potential jurors upon the State's challenge for cause. Having overruled Fierro's
points of error, we affirm the judgment of conviction.



 _____________________________________________

 Lee Yeakel, Chief Justice

Before Chief Justice Yeakel, Justices Kidd and Davis*

Affirmed

Filed: April 9, 1998

Publish












* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. See Tex.
Gov't Code Ann. § 74.003(b) (West 1988).




beyond a reasonable doubt. See Zinger v. State, 932 S.W.2d 511, 514-16 (Tex. Crim. App. 1996);
Garrett v. State, 851 S.W.2d 853 (Tex. Crim. App. 1993). Therefore, a trial court may not dismiss a
juror for cause for expressing a belief that a single witness's testimony can never establish a fact beyond
a reasonable doubt. Id. On the other hand, if a juror expresses that he or she will require more than proof
beyond a reasonable doubt, the court must dismiss the juror for cause. Id.

 Sustaita's answers, when considered in their entirety, support the trial court's finding that
Sustaita had a bias against a phase of the law on which the State was entitled to rely, to wit: he would
require a higher level of proof of intoxication than the law requires by being unable to convict in the absence
of a breath test. He stated so on several occasions during voir dire. We cannot say that faced with such
statements the trial court clearly abused its discretion by sustaining the State's challenge of Sustaita for
cause. 

 Moreover, Sustaita's answers reflect that at best he was vacillating or equivocal. When
a prospective juror "vacillates or equivocates in [his or her] ability to follow the law, the reviewing court
must defer to the trial court's judgment." Brown v. State, 913 S.W.2d 577, 580 (Tex. Crim. App. 1996)
(citing Riley v. State, 889 S.W.2d 290 (Tex. Crim. App. 1993)). Sustaita, in answers to questions by
defense counsel, first said only a breath test would define intoxication for him. When asked about a police
officer's opinion of intoxication, he recognized that police officers were trained to spot intoxicated people,
but said "that's a tough one for me, to be honest with you." When questioned by the State, he confirmed
that he could determine intoxication only if there was breath test evidence and that it would be "very
difficult" to find intoxication based on evidence other than a breath test. He then indicated that he would
consider other factors, but "would weigh more" on a breath test. However, in response to inquiries by the
trial court, he said it would not be "impossible" to find a person guilty without a breath test. He went on
to say that the testimony of one police officer alone would not be sufficient proof, but qualified his answer
by saying it would depend on the officer. Upon further questioning by the State, he stated that he thought
the State's burden was higher without a breath test. Finally, he responded to defense counsel that he could
decide the case on believable testimony without a breath test.

 Th