James Martin Wells v. State
















IN THE
TENTH COURT OF APPEALS
 

No. 10-99-005-CR

Â Â Â Â Â JAMES MARTIN WELLS,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â v.

Â Â Â Â Â THE STATE OF TEXAS,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
 

From the 220th District Court
Hamilton County, Texas
Trial Court # 6645
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
O P I N I O N
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â On July 23, 1993, James Martin Wells pled guilty to felony driving while intoxicated. See
Tex. Pen. Code Ann. Â§ 49.04 (Vernon 1994 & Supp. 1999). He was sentenced to five yearsâ
imprisonment, probated. Shortly thereafter, Wells was convicted of another DWI in Dallas
County. The court modified the conditions of probation to include treatment for alcohol abuse. 
On September 29, 1998, the court revoked Wellsâ community supervision probation and sentenced
him to five years in prison. He appeals, asserting five issues for review. We will affirm the
judgment.
DOES THE EVIDENCE SUPPORT REVOCATION?
Â Â Â Â Â Â Wells asserts that the evidence is insufficient to support the revocation of his probation. We
have previously held that sufficiency points are not independent grounds of error, but are
incorporated into the determination of whether the court abused its discretion. Brumbalow v.
State, 933 S.W.2d 298, 300-01 (Tex. App.âWaco 1996, pet. refâd); Ashcraft v. State, 918
S.W.2d 648, 655 (Tex. App.âWaco 1996, pet. ref'd); Thomas v. Thomas, 895 S.W.2d 895, 896
(Tex. App.âWaco 1995, writ denied). The State's burden of proof in a revocation proceeding
is by a preponderance of the evidence. Cobb v. State, 851 S.W.2d 871, 873 (Tex. Crim. App.
1993). Where the State has failed to meet its burden of proof, the trial court abuses its discretion
in issuing an order to revoke probation. Cardona v. State, 665 S.W.2d 492, 493 (Tex. Crim.
App. 1984). 
Â Â Â Â Â Â It is well established that, where the sufficiency of the evidence to support the trial court's
order is challenged, we review the evidence in the light most favorable to the trial court's findings. 
Freeman v. State, 917 S.W.2d 512, 514 (Tex. App.âFort Worth 1996, no pet.). Â Â Â The State filed
a motion to revoke probation on July 10, 1998. A hearing was held on three allegations: 1) DWI
committed in 1993; 2) public intoxication committed in 1997; and 3) DWI committed in 1998. 
In closing arguments, the State urged that Wells had committed the two DWI offenses, but did not
urge that he was guilty of public intoxication. The court found these two allegations true. Thus,
we will not consider the public intoxication allegation.
The 1998 DWI Offense
Â Â Â Â Â Â Viewed in the light most favorable to the trial courtâs finding, the record shows that on April
4, 1998, Officer Doug McClammy was patrolling on Highway 281 when Wells drove up behind
him. Because McClammy was driving slower than the posted speed limit, he pulled over to the
shoulder to allow Wells to pass. Although he slowed to approximately twenty miles per hour,
Wells would not pass him. Eventually, Wells did pass McClammy and then drove through a red
light without stopping. McClammy activated his overhead lights in an attempt to stop Wells for
running the red light, but Wells refused to stop. Wells drove approximately forty-five miles per
hour in a thirty mile-per-hour zone until he pulled into a driveway. McClammy testified that he
pulled into the driveway behind Wells and could not see anyone in the car. Not believing that
Wells could have exited the car without being seen, McClammy approached Wellsâ car and saw
him lying across the front seat. McClammy then took out his gun and ordered Wells to get out
of the car. McClammy ordered Wells to get out of the car three times before Wells acknowledged
his request. McClammy then told Wells that he was being detained for running a red light and
asked him to have a seat in the passenger side of the patrol car. 
Â Â Â Â Â Â McClammy did a driverâs license check and discovered that Wells has a history of driving
while intoxicated. McClammy stated that he could smell âan intoxicating beverageâ on Wellsâ
breath. McClammy told Wells that he wanted to back the patrol car out of the driveway and onto
the road so that Wells could perform a field sobriety test on a flat surface. Wells got out of the
car and headed for the house. McClammy went after him, grabbed him, and called for backup. 
While on the porch, McClammy told Wells that he was under arrest, and Wells stated that he was
not going to jail. While they were struggling, Wells opened the door to the house, and they both
went in, falling over a couch. They continued to fight until other officers arrived. No sobriety
tests were ever performed. The officers decided to treat Wellsâ behavior as a refusal to perform
the sobriety tests. McClammy testified that Wells admitted to drinking âa few beers.â He
believed that Wells was intoxicated.
Â Â Â Â Â Â Officer Jim Clifton testified that he responded to McClammyâs call for backup. He testified
that âMr. Wells was intoxicated, extremely intoxicated, [and had] a strong smell of alcohol on his
person and his breath smelled like alcoholic beverage.â Clifton observed that Wells had red,
watery eyes and that his speech was slurred. Clifton further testified that Wells âwent berserkâ
at the jail, beating on the windows and breaking things. He believed that Wells was intoxicated.
Â Â Â Â Â Â Wells does not dispute that he drove a motor vehicle on a public highway. The opinion
testimony of an officer, standing alone, is legally sufficient to prove intoxication. Fierro v. State,
969 S.W.2d 51, 59 (Tex. App.âAustin 1998, no pet.). Proof of a single violation is sufficient
to support revocation. See Stevens v. State, 900 S.W.2d 348, 350 (Tex. App.âTexarkana 1995,
pet. ref'd); Rains v. State, 678 S.W.2d 308, 309-10 (Tex. App.âFort Worth 1984, pet. refâd). 
Based on the record, the court did not abuse its discretion in finding sufficient evidence to revoke
Wellsâ probation. 
The 1993 DWI Offense
Â Â Â Â Â Â Wells also complains that the court erred in considering the 1993 DWI conviction in revoking
his probation. We have found that the court had sufficient evidence of the 1998 DWI, and one
violation of probation is sufficient to support revocation. See id. We overrule issues one and two.
LEGALITY OF THE ARREST
Â Â Â Â Â Â In his third, fourth, and fifth issues, Wells asserts that the arrest for the 1998 DWI was illegal
and that all evidence of that violation should have been disregarded for purposes of revocation.


 
He specifically asserts that the arrest was illegal because McClammy âforced his way into his
home without a warrant and without permission on a mere Class C misdemeanor charge.â Wells
made no objection to the admission of this evidence and, thus, did not give the trial court an
opportunity to rule on this complaint. Therefore, these issues are not preserved for our review. 
See Tex. R. App. P. 33.1(a). Issues three, four, and five are overruled.


 
Â Â Â Â Â Â Having overruled all issues presented, we affirm the judgment.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â BILL VANCE
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Before Chief Justice Davis,
Â Â Â Â Â Â Â Â Â Â Justice Vance, and
Â Â Â Â Â Â Â Â Â Â Justice Gray
Affirmed
Opinion delivered and filed September 22, 1999
Do not publish



Normal style='text-align:justify;line-height:200%'>   As to DelgadoÂs work record and length of
residency, I see no evidence in the record.

Â Â Â Â Â Â Â  As to DelgadoÂs family ties, the evidence
was that either DelgadoÂs mother and sister were not at the telephone numbers
that Delgado had given for them or that they were not able to contact Delgado.Â 
The record does not show that DelgadoÂs sister resided in the trial courtÂs
jurisdiction.

Â Â Â Â Â Â Â  As to DelgadoÂs prior criminal record, his
application for community supervision disclosed three convictions: two for
assault and one for driving while intoxicated.Â  See Tex. Penal Code Ann. Â§Â 22.01(a) (Vernon Supp. 2007), 49.04(a) (Vernon 2003).Â  The record does not disclose whether those
convictions were for felony or misdemeanor offenses, but, in either case, they
weigh against Delgado.

Â Â Â Â Â Â Â  As to DelgadoÂs conformity with previous
conditions of release, it was unfavorable.Â  Delgado appeared for his plea
hearing.Â  But Delgado repeatedly failed to appear for the presentence
investigation interview and psychological evaluations that constituted part of
the presentence investigation ordered by the trial court.Â  Delgado also failed
to appear timely for his sentencing, so that the trial court revoked DelgadoÂs
bond and ordered it forfeited.Â  Delgado, in custody, appeared for his reset
sentencing.Â  

Â Â Â Â Â Â Â  As to any other outstanding bonds, I see
no evidence in the record.

Â Â Â Â Â Â Â  I consider the fact that we have
overturned DelgadoÂs conviction, but here that consideration does not have the
import that it usually does.Â  We held that the trial court erred in not
allowing Delgado to withdraw his plea of guilty after the trial court decided
not to accept DelgadoÂs plea-bargain agreement.Â  That error does not, for
example, hold evidence inadmissible, or otherwise affect the StateÂs ability to
continue to prosecute Delgado for the offenses charged.Â  Nor do I believe it
likely that our decision in DelgadoÂs appeal will be overturned.Â  Cf.
Delgado, 2008 Tex. App. LEXIS 2827.

Â Â Â Â Â Â Â  The majority considers only the pretrial
bond set by the trial court.Â  But the trial court made that determination in November,
2006, before the trial court received evidence of DelgadoÂs offense, before
Delgado failed to appear as ordered, before Delgado failed to participate in
the court-ordered presentence investigation, before the trial court received
evidence that Delgado did not reside at the address he gave the court and could
not be contacted at the telephone number he gave the court, before the trial
court received evidence that the contacts Delgado gave could not contact him, and
before the trial court found Delgado guilty and sentenced him to ten yearsÂ
imprisonment.Â  While the majorityÂs approach is easierÂit simply relies on what
was done before, notwithstanding that even that bond was subsequently revokedÂit
does not rely on even the currently available evidence to set DelgadoÂs
reasonable bail, in accordance with the constitutions and statutes, sufficient
to give reasonable assurance that he will appear for further proceedings.Â  Our
alternative, perhaps, is to deny the motion for bail without prejudice to the filing
of another motion that could include additional relevant evidence.Â  Failing
that, and failing our setting the motion for live hearing before us, and
failing our remanding to the trial court for hearing, our best course is to
request the briefing on affidavits and evidence as stated above.

Â Â Â Â Â Â Â  The majority sets bail without
regard to constitution, statute, or controlling case law; and, to the extent
that evidence of the factors stated in the constitution, statutes, and cases is
in the record, that evidence weighs against setting a low bail--bail no higher
than that set in the trial court, which was subsequently revoked for the
failure to comply with the conditions of bond.[3]Â 
Accordingly, I dissent. 

TOM GRAY

Chief
Justice

Dissent
issued and filed June 11, 2008

Publish

[CR25]









Â Â Â Â Â Â Â Â Â  [1]Â The
State agreed to waive one count in the plea-bargain agreement.Â  Delgado pleaded
guilty to the remaining count.Â  The trial court rejected the plea agreement but
refused to allow Delgado to withdraw his plea.Â  It was this refusal that
resulted in the reversal.





Â Â Â Â Â Â Â Â Â  [2]Â We
have requested a supplemental record containing the evidence against Delgado
admitted at his plea of guilty, but we have not received the evidence before
the majority issues its order.Â  That evidence could only further weigh against
Delgado.





Â Â Â Â Â Â Â Â Â  [3]Â I
do not herein address the reasonable terms and conditions that should be
imposed on DelgadoÂs bond, such as no contact with the victim or her family
members, avoiding the use of illegal drugs and consumption of alcoholic
beverages, and abiding by the laws of the United States and Texas.