# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-14-00722-CR
NO. 03-14-00723-CR
NO. 03-14-00724-CR

**Mark Fruge, Appellant**

**v.**

**The State of Texas, Appellee**

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
NOS. D-1-DC-13-200256, D-1-DC-13-200257, D-1-DC-13-200259
HONORABLE DAVID CRAIN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Under two separate indictments, Mark Fruge was charged with the offenses of aggravated assault with a deadly weapon and aggravated robbery. *See* Tex. Penal Code §§ 22.01 (listing elements of assault), .02(a)(2) (specifying that assault is aggravated assault if person uses or exhibits deadly weapon), 29.02 (governing crime of robbery), .03(a)(2) (specifying that robbery is aggravated robbery if defendant used or exhibited deadly weapon). Under a third indictment, Fruge was charged with one count of attempted capital murder and with one count of aggravated assault against a public servant. *See id.* §§ 15.01(a) (detailing when person attempts to commit offense), 19.02(b) (defining offense of murder), .03(a)(1) (explaining that murder is capital murder if victim is peace officer or fireman), 22.01(a), .02(a) (describing assault and aggravated assault). The three

indictments also contained enhancement paragraphs alleging that Fruge had previously been convicted of three felony offenses.

At the end of the guilt-or-innocence phase of the trial, the jury acquitted Fruge of the attempted-capital-murder charge but found him guilty of the three other offenses. During the punishment phase, Fruge entered pleas of true for the enhancement allegations. At the end of the punishment phase, the jury determined that Fruge should be imprisoned for life for each offense. *See id.* §§ 22.02(b)(2)(B) (explaining that, in general, aggravated assault is second-degree felony but is first-degree felony if offense is committed against public servant), 29.03(b) (stating that aggravated robbery is first-degree felony); *see also id.* § 12.42(d) (elevating punishment range for felony offense of any degree if defendant had previously been convicted of two felonies). The district court entered its judgment in accordance with the jury's determinations.

In two issues on appeal, Fruge asserts that the district court erred by "granting the State's challenge to a veniremember" and by admitting "evidence of a car jacking that was committed after" the offenses in question. We will affirm the district court's judgments of conviction.

## DISCUSSION

### Challenge to Jury Panelist

In his first issue on appeal, Fruge asserts that the district court "erred in granting the State's challenge for cause," which denied him "a fair and impartial trial."

During voir dire, the State asked the jury panel whether they thought that a case had to be proven "beyond all doubt" or proven "with 100 percent certainty before they can find someone guilty," and the panelist at issue responded as follows:

2

[Panelist]: I believe that we've been talking about incarceration, taking years of someone's life that I would have to be absolutely certain. The level of false convictions are incorrect, and with convictions these days I would feel horrible about sending someone to prison for something that was doubtful.

Later, when Fruge was discussing reasonable doubt with the panel, the same panelist stated as follows: "It just kind of sounds to me like in talking about reasonable doubt, it almost sounds to me like you're trying to prove innocence instead of proving guilty. It just sounds backwards to me like you're trying to prove innocence -- you're guilty until proven innocent. It just sounds like that to me."

When the State and Fruge were discussing which jurors should be struck, the panelist was brought before the district court and questioned regarding his previous statements. That exchange occurred as follows:

[State]: I know when [the State] was questioning you about the burden of proof and reasonable doubt and beyond a reasonable doubt, you had made the comment that you would need to be 100 percent certain.

[Panelist]: Yeah.

[State]: And you understand that the law is beyond a reasonable doubt. There is actually -- while there is no definition for beyond a reasonable doubt, there is case law that says it's not 100 percent certainty. Would you be able to follow the law and listen to a case and determine guilt or innocence based on beyond a reasonable doubt, or would you need 100 percent certainty?

[Panelist]: In my personal beliefs, spirituality and opinion I just feel that I'm taking into consideration someone else's livelihood, I would need to be pretty darn certain.

[Court]: Okay. And when you say that, would you need to be 100 percent certain?

[Panelist]: Yes.

. . .

3

[Fruge]: When you say "100 percent certain," are you attributing that to beyond a reasonable doubt level or -- I'm not sure what -- because you say you have to be pretty confident.

[Panelist]: If I'm going to [convict] somebody [of] a crime, then I would want to be 100 percent certain that that crime was committed beyond a reasonable doubt.

. . .

[Fruge]: The point is, are you going to hold the State to its burden, or are you going to require the State to a higher burden than what they're required?

[Panelist]: I would hold someone innocent until proven guilty, not the other way around, which to me is how it sounds with our discussion. It sounds like people are trying to prove innocence instead of guilt.

. . .

[Fruge]: Are you going to require the State -- to hold the State to a higher burden of proof than beyond a reasonable doubt?

[Panelist]: No.

After the State and Fruge finished questioning the panelist, Fruge argued that the panelist should not be struck for cause because the panelist "said he would . . . hold the State to its burden and not more," but the district court explained that the panelist "said 100 percent three times, so I'll grant the State's motion to strike for cause. I think he won't follow the law that they're entitled to follow."

On appeal, Fruge urges that the district court erred when it made its ruling because it improperly focused on the panelist's use of the phrase "100 percent," because it did not consider that the panelist only adopted the phrase "100 percent" after the State used the phrase, because the panelist only used the phrase to describe his personal belief regarding the evidence and not to

4

describe the State's burden, because panelists are allowed to decide what "proof beyond a reasonable doubt" means for themselves, because panelists should not be excused "based upon the type and amount of evidence they require to reach that level of confidence," and because the State did not meet its burden of establishing that the panelist understood the law but could not follow it.

Under the Code of Criminal Procedure, a panelist may be struck for cause at the request of the State if the panelist "has a bias or prejudice against any phase of the law upon which the State is entitled to rely for conviction or punishment." Tex. Code Crim. Proc. art. 35.16(b)(3). Because "the law permits a range of 'reasonable doubt,'" a venireperson who says that "he will hold the State to the high end of the range is not requiring anything that the law does not tolerate." *Castillo v. State*, 913 S.W.2d 529, 533 (Tex. Crim. App. 1995). However, a venireperson "who requires proof to a level of confidence 'beyond all doubt' is . . . challengeable for cause on the basis of inability to follow the law." *Id.* at 533 n.1; *see id.* at 533-34 (explaining that if venireperson really does hold State to higher burden than law allows, he should be excused for cause); *see also Coleman v. State*, 881 S.W.2d 344, 359-60 (Tex. Crim. App. 1994) (concluding that venireperson may properly be excused for cause when he would hold State to burden higher than beyond reasonable doubt and that venireperson was properly excluded when she made statements indicating that State would have to prove case beyond all doubt and that she would have to be 100 percent certain).

"Because the trial court is in the best position to evaluate the demeanor of a prospective juror, we review a trial court's determination of a challenge for cause only for clear abuse of discretion." *Fierro v. State*, 969 S.W.2d 51, 57 (Tex. App.—Austin 1998, no pet.). In other words, "we reverse 'only when the trial judge's decision was so clearly wrong as to lie outside that

5

zone within which reasonable persons might disagree.'" *Id.* (quoting *Kemp v. State*, 846 S.W.2d 289, 297 (Tex. Crim. App. 1992)). Moreover, a reviewing court should "recognize that it is faced with only a cold record. Perforce, when undertaking an abuse of discretion review, the juror's bias need not be proven with 'unmistakable clarity.'" *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992). In addition, "[w]hen the potential juror's answers are vacillating, unclear or contradictory, particular deference is accorded to the trial court's decision." *King v. State*, 29 S.W.3d 556, 568 (Tex. Crim. App. 2000); *see Rachal v. State*, 917 S.W.2d 799, 810 (Tex. Crim. App. 1996) (explaining that trial court's "superior point of view is particularly important and deserving of our deference" when potential juror's statements are unclear). Furthermore, "[w]hen reviewing a trial court's decision to grant or deny a challenge for cause, we look at the entire record to determine if there is sufficient evidence to support the court's ruling." *Feldman v. State*, 71 S.W.3d 738, 744 (Tex. Crim. App. 2002); *see Fierro*, 969 S.W.2d at 58 (stating that when "reviewing the trial court's exercise of its discretion in a particular case, we review the totality of the relevant voir dire examination").

As an initial matter, we note that although the State used the phrase "100 percent certainty" before the panelist answered the question about the burden of proof, the panelist did say that he "would have to be absolutely certain" when he answered the question. Moreover, when he was called before the district court to discuss his answer, he agreed that he had previously made the comment that he would have to be "100 percent certain" to convict. In addition, although the panelist answered "no" when asked if he would hold the State to a higher burden than beyond a reasonable doubt and although the panelist explained that he "would want to be 100 percent certain

6

that the crime was committed beyond a reasonable doubt," the panelist also stated that his "personal beliefs, spirituality and opinion" would require him to be 100 percent certain.

Under the circumstances present in this case in which the panelist made contradictory and vacillating statements regarding the burden to which he would require the State to prove its case and in which some of those statements demonstrated that the panelist would require proof beyond all doubt before he could convict, we cannot conclude that the district court clearly abused its discretion by granting the State's motion to strike the panelist for cause. Accordingly, we overrule Fruge's first issue on appeal.[1]

---

[1] In his brief, Fruge suggests that the exclusion of the juror is not subject to a harm analysis and that the improper exclusion, without more, warrants a reversal of his conviction. As support for this proposition, Fruge relies on *Gray v. Mississippi*, 481 U.S. 648 (1987). Although we need not reach the issue because we have determined that the district court did not abuse its discretion by striking the panelist for cause, we do note that given the significant differences between this case and *Gray*, Fruge's reliance on *Gray* seems misplaced. *See id.* at 652-67 (concerning death-penalty conviction and addressing circumstances in which state sought systemic exclusion by lodging challenges for cause and peremptory challenges against every juror who expressed any uncertainty in ability to vote for death penalty, where state sought to challenge additional juror who expressed no opposition to death penalty and argued that trial court had forced state to waste its peremptory challenges earlier, where trial court removed juror over defense's objection, where Supreme Court determined that juror had been removed for cause but was not substantially impaired, and where Supreme Court reaffirmed that this type of violation of right under *Witherspoon* is not subject to harmless-error review).

Moreover, the court of criminal appeals has explained that the holding from *Gray* only applies to cases in which there is an erroneous *Witherspoon* exclusion and that if a "*Witherspoon* error is not at issue, the erroneous excusal of a veniremember will call for reversal 'only if the record shows that the error deprived the defendant of a lawfully constituted jury,'" meaning that the jurors who actually sat were not impartial. *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009) (quoting *Jones v. State*, 982 S.W.2d 386, 394 (Tex. Crim. App. 1998)); *see Witherspoon v. Illinois*, 391 U.S. 510, 520-21 (1968) (determining that eliminating every venireperson who expressed any reservations about death penalty produced jury uncommonly willing to condemn person to death). In addition, we note that Fruge has made no showing on appeal and that nothing in the record demonstrates that the panelist's exclusion deprived Fruge of a lawfully constituted jury or that the

7

**Evidence of Extraneous Offense**

In his second issue on appeal, Fruge argues that the district court erred by allowing the State to introduce evidence regarding an extraneous offense that he allegedly committed.

During the trial, evidence was presented indicating Fruge's culpability for the crimes that he was ultimately convicted of.[2] In particular, the evidence showed as follows:

- Abraham Martinez, who was an employee for an armored car company, went into a store to pick up deposits.

- While Martinez was in the store, Fruge pointed a gun at him and demanded the money.

- Fruge later pointed a gun at the cashier in the store, Ann Marie Lozano, or at the cash register.

- Fruge pulled the trigger multiple times and shot the cash register, a post by the register, and a computer, which were all very close to Lozano.

- Lozano ducked when she saw the gun and stayed behind the counter until Fruge left and everyone stopped screaming.

- Fruge left the store and ran to the back of the shopping center.

- Officer Roosevelt Granderson was in the area, observed Fruge driving away from the scene, and pursued Fruge.

---

jury that sat was not impartial. *See Abalos v. State*, No. 03-01-00351-CR, 2002 Tex. App. LEXIS 2867, at *4 (Tex. App.—Austin Apr. 25, 2002, pet. ref'd) (not designated for publication) (overruling issue where defendant did not allege and where record did not show that alleged error deprived him of lawful jury). Accordingly, even if we concluded that the district court abused its discretion by striking the panelist, we would be unable to conclude that the error was harmful.

[2] During their testimonies, some of the witnesses did not refer to Fruge by name or identify him. However, because identity is not an issue in this appeal and because Fruge was positively identified by several of the witnesses and through DNA testing, we will refer to the subject of the testimony as Fruge for ease of reading.

- Fruge turned onto a road behind another shopping center and stopped his car.

- When Officer Granderson got out of his car, Fruge started firing at him.

- After Fruge ran to a nearby wooded area, Officer Granderson pursued him.

- Officer Granderson caught up with Fruge and ordered Fruge to stop.

- Fruge turned around, shot multiple times, and hit Officer Granderson in the leg.

- After shooting Officer Granderson, Fruge ran from the scene.

In addition to the evidence summarized above relating to the charged offenses, evidence was introduced showing that the police searched the car that Fruge abandoned, found an address listed for the car after running a license-plate check and after seeing a magazine in the car with Fruge's name and address on it, went to the nearby apartment complex with that address, discovered Fruge at the complex, apprehended Fruge, and found a gun as well as money wrapped in plastic.

The evidence that forms the subject of Fruge's second issue on appeal concerns events that occurred in the moments after Fruge shot Officer Granderson in the leg and before he was found in the nearby apartment complex. Specifically, Richard Harris testified that on the day in question, Fruge approached him as he was walking to his car; that Fruge "produced a pistol"; that the pistol was aimed at the ground; that Fruge never pointed the pistol at him; that Fruge said, "we were going for a ride"; that Fruge got into the backseat of Harris's car; that Fruge told Harris to start driving and directed Harris; that Fruge said, "he wasn't going to hurt me"; and that Fruge revealed that "he had done something that he shouldn't have" and needed to get out of the area. In addition,

9

Harris related that the incident lasted about fifteen minutes and that Fruge got out of the car after telling Harris to stop. When describing the incident, Harris testified that Fruge never raised his voice. During Harris's testimony, three photos of the area where the incident occurred were introduced into evidence. Earlier in the trial, four photos of Harris's car were admitted into evidence as exhibits.

On appeal, Fruge asserts that the district court erred by admitting evidence concerning his alleged interaction with Harris. In particular, Fruge asserts that the evidence was evidence of an extraneous offense and that the evidence had no relevance to the issues other than to establish "character conformity," which is not permitted under the Rules of Evidence. *See* Tex. R. Evid. 404(b)(1) (stating that evidence of extraneous offense may not be used "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character"); *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1990) (on reh'g) (explaining that evidence is inadmissible if it has "no relevance apart from character conformity"). Moreover, Fruge argues that the evidence had no relevance apart from impermissibly establishing his character because the evidence regarding the charged offenses and regarding his arrest were "entirely explained without the need of the extraneous" offense evidence.

When reviewing a trial court's ruling on the admission of evidence, appellate courts use an abuse-of-discretion standard of review. *Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010). Under that standard, a trial court's ruling will only be deemed an abuse of discretion if it is so clearly wrong as to lie outside the zone of reasonable disagreement, *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is arbitrary or unreasonable, *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). Moreover, the ruling will be upheld provided that

the trial court's decision "is reasonably supported by the record and is correct under any theory of law applicable to the case." *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005).

In general, Rule 404 does prohibit the admission of evidence of an extraneous offense to establish a person's character, but the Rule also provides a non-exhaustive list of permitted uses for evidence of extraneous offenses, including "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Tex. R. Evid. 404(b)(2). In addition, "extraneous offense evidence may be admissible as contextual evidence," *Swarb v. State*, 125 S.W.3d 672, 681 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd), because juries are "'entitled to know all relevant surrounding facts and circumstances of the charged offense; an offense is not tried in a vacuum,'" *Wyatt v. State*, 23 S.W.3d 18, 25 (Tex. Crim. App. 2000) (quoting *Moreno v. State*, 721 S.W.2d 295, 301 (Tex. Crim. App. 1986)). *See also id.* (explaining that "same transaction contextual evidence may be admissible where 'several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony, . . ., of any one of them cannot be given without showing the others'" (quoting *Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993))). "[S]ame-transaction contextual evidence is admissible only when the offense would make little or no sense without also bringing in that evidence." *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). "[I]f 'the extraneous offense evidence is shown to be a necessarily related circumstance of the defendant's flight, it may be admitted to the jury'" because evidence of "'[f]light is admissible as a circumstance from which an inference of guilt may be drawn.'" *Id.* at 470 (quoting *Alba v. State*, 905 S.W.2d 581, 586 (Tex. Crim. App. 1995)).

11

The evidence presented during the trial established that Fruge displayed his gun and forced Harris to drive him away from the shopping center immediately after he shot Officer Granderson and that Fruge did those acts in order to get away from the scenes of his crimes after attempting to evade the police and after abandoning the vehicle that he was driving. *See id.* (explaining that trial court did not abuse its discretion by admitting evidence of extraneous offense in which defendant stole car during "flight from the instant offense as he attempted to travel to his mother's home"); *Alba*, 905 S.W.2d at 586 (determining that trial court did not abuse its discretion by admitting evidence showing that defendant pulled gun on individual and demanded that he drive him somewhere when evidence showed that extraneous offense occurred within one hour of murder and after defendant had abandoned his own car). Accordingly, we must conclude that the district court did not abuse its discretion by overruling Fruge's objection under Rule 404 to the admission of evidence regarding his encounter with Harris.[3]

In his second issue, Fruge also contends that the district court erred by admitting the evidence over his objection under Rule 403 because the extraneous-offense evidence "was more prejudicial than probative." *See* Tex. R. Evid. 403.

Under Rule 403, a trial "court may exclude relevant evidence if its probative value is *substantially outweighed* by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." *Id.*

---

[3] In his brief, Fruge notes that there was no jury instruction setting out the permissible uses for extraneous-offense evidence. Although Fruge does not present this as an issue on appeal, we note that "a limiting instruction is not required when evidence is admitted as same-transaction contextual evidence." *See Devoe v. State*, 354 S.W.3d 457, 471 (Tex. Crim. App. 2011).

(emphasis added). "Under Rule 403, it is presumed that the probative value of relevant evidence exceeds any danger of unfair prejudice. The rule envisions exclusion of evidence only when there is a clear disparity between the degree of prejudice of the offered evidence and its probative value." *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) (footnotes and internal quotation marks omitted). Accordingly, "the plain language of Rule 403 does not allow a trial court to exclude otherwise relevant evidence when that evidence is merely prejudicial. Indeed, all evidence against a defendant is, by its very nature, designed to be prejudicial." *Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013) (internal citation omitted).

When performing a 403 analysis, courts should balance the following factors:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006) (footnote omitted); *see Davis*, 329 S.W.3d at 806 (explaining that "probative value" refers to how strongly evidence makes existence of fact more or less probable and to how much proponent needs evidence and that "unfair prejudice" refers to how likely it is that evidence might result in decision made on improper basis, including emotional one). Although appellate courts review a trial court's ruling on Rule 403 grounds for an abuse of discretion, *see Pawlak*, 420 S.W.3d at 810, reviewing courts should bear in mind that trial courts are given "an especially high level of deference" for Rule 403 determinations, *see United States v. Fields*, 483 F.3d 313, 354 (5th Cir. 2007).

13

As set out above, the evidence was relevant to the issue of whether Fruge committed the charged offenses because it constituted evidence of Fruge's flight from the scenes of the crimes and of his intent to evade the police. In fact, according to Harris's testimony, Fruge admitted that he had just done something that he should not have and, for that reason, needed to get out of the area.

Regarding the State's need for the evidence, other evidence presented during the trial established that Fruge committed the alleged crimes. Moreover, other witnesses testified that prior to Fruge finding Harris, Fruge attempted to evade the police by driving from the scene, by shooting at the police, and by running from the police on foot. Accordingly, the State's need for the evidence was not great.

Although the evidence regarding the extraneous offense and the extension of the criminal episode could potentially have created a negative impression on the jury, we do not believe that the evidence had much, if any, tendency to suggest a conviction on an improper basis. The evidence regarding the charged offenses demonstrated conduct that was much more serious and dangerous than the extraneous offense. For example, although Harris testified that Fruge displayed the gun, he did not testify that Fruge pointed it at him or shot the gun. Moreover, Harris's testimony was not emotional in nature and simply related the events that occurred. *See Gigliobianco*, 210 S.W.3d at 641 (stating that evidence might encourage decision on improper basis if it arouses jury's sympathy or hostility without regard to logical probative force of evidence). Similarly, there was nothing graphic or provocative about the seven photos that were admitted as exhibits. In addition, the evidence pertaining to the extraneous offense was not confusing or technical in nature, *see id.* (explaining that scientific evidence is type of evidence that might mislead jury not properly equipped to consider

14

probative value), and it helped to fill in the gap in time between when Fruge shot Officer Granderson and when Fruge was arrested.

Finally, the evidence did not consume an inordinate amount of time or repeat evidence that had already been admitted. Although the extraneous offense was briefly mentioned by another witness, the bulk of the evidence regarding Fruge's conduct between the shooting of Officer Granderson and Fruge's arrest was presented through Harris's testimony. In addition, as mentioned above, the State introduced seven photos pertaining to the extraneous offense, but the State introduced hundreds of photos relating to the charged offenses as exhibits. Similarly, the guilt or innocence phase of the trial was held over four days and spans approximately six hundred record pages, but Harris's testimony is only sixteen pages long. *Compare Schiele v. State*, No. 01-13-00299-CR, 2015 Tex. App. LEXIS 1646, at *19-20, *21-22 (Tex. App.—Houston [1st Dist.] Feb. 19, 2015, pet. ref'd) (mem. op., not designated for publication) (determining that fact that evidence in dispute spanned 50 pages of 118-page record and was composed of video recordings lasting approximately 30 minutes weighed against admissibility because evidence consumed "not insignificant" amount of time but still finding that trial court did not abuse its discretion where half of factors relevant to 403 analysis weighed in favor of admissibility), *and McGregor v. State*, 394 S.W.3d 90, 121-22 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (concluding that fact that evidence of extraneous offenses constituted one third of trial weighed against admissibility but upholding trial court's decision to admit evidence), *with Russell v. State*, 113 S.W.3d 530, 544-49 (Tex. App.—Fort Worth 2003, pet. ref'd) (determining that trial court erred by admitting evidence of extraneous offenses where evidence was 30% of testimony, where State's need for evidence was low, and where evidence of extraneous offense was "more heinous" than charged offense).

15

In light of the factors above, of our standard of review, and of the presumptions in favor of admissibility, we cannot conclude that the district court abused its discretion by overruling Fruge's Rule 403 objection.

For the reasons previously given, we overrule Fruge's second issue on appeal.

**Clerical Error in Judgment**

Although Fruge does not raise this on appeal, we observe that the judgment of conviction for the aggravated assault in trial court cause number D-1-DC-13-200257 contains a clerical error. As mentioned above, the indictment for that offense alleged that Fruge committed aggravated assault against Officer Granderson knowing that Officer Granderson was a peace officer. That offense is governed by subsection 22.02(b)(2)(B) of the Penal Code; however, the judgment in that case reflects that the conviction was under subsection 22.02(b)(2)(A) of the Penal Code, which applies to aggravated assaults committed by a public servant. *Compare* Tex. Penal Code § 22.02(b)(2)(B), *with id.* § 22.02(b)(2)(A). This Court has the authority to modify incorrect judgments when it has the information necessary to do so. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993). Accordingly, we modify the judgment of conviction in cause number D-1-DC-13-200257 to reflect that Fruge was convicted under subsection 22.02(b)(2)(B) of the Penal Code.

**CONCLUSION**

Having modified the judgment of conviction in cause number D-1-DC-13-200257 and having overruled Fruge's issues on appeal, we affirm that judgment of conviction as modified. Having overruled Fruge's issues on appeal, we affirm the remaining judgments of conviction.

16

_____

David Puryear, Justice

Before Justices Puryear, Goodwin, and Bourland

D-1-DC-13-200256:   Affirmed
D-1-DC-13-200257:   Modified and, as Modified, Affirmed
D-1-DC-13-200259:   Affirmed

Filed:   December 3, 2015

Do Not Publish

17