In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00095-CR


______________________________




CLIFFORD WILLIAM GRAHAM, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 188th Judicial District Court


Gregg County, Texas


Trial Court No. 28746-A




 




Before Morriss, C.J., Ross and Grant,* JJ.


Opinion by Chief Justice Morriss


Concurring Opinion by Justice Ross


________________

*Ben Z. Grant, Justice, Retired, Sitting by Assignment


O P I N I O N



 Clifford William Graham appeals from his jury conviction on his guilty plea for the offense
of arson. He pled true to one enhancement, and the jury assessed his punishment at seventy years'
imprisonment and a fine of $10,000.00. (1)

 Graham contends on appeal (1) that the trial court erred by overruling his motion to suppress
his confession, (2) that the trial court erred by permitting television cameras in the courtroom over
his objection, (3) that the jury improperly considered the law on parole, and (4) that the evidence is
both legally and factually insufficient to support his conviction.

Graham's Confession

 We first address the suppression issue. A pretrial hearing was conducted on Graham's motion
to suppress. However, at the end of the hearing, one witness was not available, and the trial court
did not rule at that time. We have examined the record and cannot find any point at which the trial
court later ruled on the suppression motion or at which the matter was later broached for discussion. 
In the absence of either an explicit or implicit ruling by the trial court, there is nothing about which
to complain. Tex. R. App. P. 33.1(b). Further, we cannot conclude the court made an implicit ruling
in the absence of any language suggesting it had any intention to do so. 

 Finally, we recognize that, when the statement was admitted into evidence, counsel
affirmatively stated he had no objection to its introduction. When a court overrules a pretrial motion
to suppress evidence, the defendant need not subsequently object to the admission of the same
evidence at trial to preserve error. Gearing v. State, 685 S.W.2d 326, 329 (Tex. Crim. App. 1985), (2)
overruled on other grounds, Woods v. State, 956 S.W.2d 33 (Tex. Crim. App. 1997); Fierro v. State,
969 S.W.2d 51, 55 (Tex. App.-Austin 1998, no pet.); Hardin v. State, 951 S.W.2d 208, 210 (Tex.
App.-Houston [14th Dist.] 1997, no pet.). Those same cases, however, also hold that the defendant
waives his or her pretrial objection if he or she, as did Graham, affirmatively asserts at trial that he
or she has no objection to the admission of the evidence. Fierro, 969 S.W.2d at 55; Hardin, 951
S.W.2d at 210; Gearing, 685 S.W.2d at 329. We find that this contention has not been preserved
for review.

Cameras in the Courtroom

 Graham next contends the trial court erred by allowing television cameras in the courtroom
during the trial. Graham argues this is error and harmful because there was evidence that, at one
point, he had called a television station to see if he had made the news. 

 Graham bases his claim of error on Estes v. Texas, 381 U.S. 532 (1965). In Estes, a widely
publicized and media intensive case, the defendant's trial was conducted in a "circus atmosphere"
due to the intrusion of press and television equipment in the courtroom. In that opinion, the majority
held that, in light of the great notoriety of the trial, due process of law was denied the accused by the
televising and broadcasting of the proceedings.

 Neither the Texas Legislature nor Texas courts have directly addressed televising courtroom
proceedings in criminal cases. Each court, however, has "all powers necessary for the exercise of
its jurisdiction," Tex. Gov't Code Ann. § 21.001(a) (Vernon Supp. 2003), and is to "control 
proceedings so that justice is done." Tex. Gov't Code Ann. § 21.001(b) (Vernon Supp. 2003). 
Trial courts have broad and plenary power to regulate trials. Ex parte Jacobs, 664 S.W.2d 360 (Tex.
Crim. App. 1984). The courts have that inherent power over "the every day administration of
justice" when handling criminal cases. See Matchett v. State, 941 S.W.2d 922, 932 (Tex. Crim. App.
1996). "[A]bsent a constitutional provision, statute, or rule to the contrary, the trial court has the
power to control the procedural aspects of a case." Marx v. State, 987 S.W.2d 577, 588 (Tex. Crim.
App. 1999) (Keller, J., dissenting).

 We acknowledge that the "circus atmosphere" decried by the United States Supreme Court
remains undesirable and inappropriate for criminal prosecutions. We also recognize that broadcast
camera equipment circa 2001 is a far cry from the black and white pedestal cameras used in 1964. 
It is typically fairly unobtrusive, and there is nothing in this record to suggest the existence of the
type of inappropriate atmosphere described in Estes. We also recognize that the Texas Supreme
Court, in its Rules of Civil Procedure, has set out specific guidelines for the use of cameras in civil
proceedings. Tex. R. Civ. P. 18c. Similar rules exist governing the use of broadcast equipment in
appellate courts. Tex. R. App. P. 14.1, 14.2. Although this does not control our analysis, it
emphasizes the fact that, in the absence of aggravating factors, broadcast activity in a courtroom is
not, standing alone, inappropriate when properly controlled by the court. We conclude that, under
this record, the trial court did not abuse its discretion by permitting the media to remain in the
courtroom. 

 Even if error were shown, counsel has not directed this Court to anything in the record to
suggest that an inappropriate situation was caused by the presence of the broadcast media in the
courtroom. We find Graham's suggestion that the jury might have reasoned the media was there at
his request or desire to be, at most, improbable. Accordingly, we find any error that may have
occurred was harmless. We overrule this contention of error.

Considering Parole

 Graham next contends error is shown in assessing punishment because the jury improperly
considered parole during its deliberations.

 We generally presume the jury follows the trial court's instructions in the manner presented.
Colburn v. State, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998) (parole charge and allegation of juror
misconduct in considering parole); see Williams v. State, 937 S.W.2d 479, 490 (Tex. Crim. App.
1996) (jury presumed to follow court's instructions as given); Waldo v. State, 746 S.W.2d 750, 751
(Tex. Crim. App. 1988) (jury presumed to follow instruction to disregard evidence). 

 In Colburn, the court held that the presumption is rebuttable, but that the appellant had
pointed to no evidence in rebuttal, and that a jury note suggesting the jury discussed parole at a
preliminary point was not sufficient to rebut the presumption. Thus, the court presumed the jury
followed the court's instructions and thereafter did not consider the possibility of parole in reaching
its verdict. Colburn, 966 S.W.2d at 520.

 In this case, Graham also points to a jury note as showing the jury's improper actions. In that
note, the jury presented the court with the following question:

 A sentence of 60 yr. or a sentence of 80 yr. would both be eligible for parole after 15
yr. less time earned for good conduct.


 Yes No


 [/s/] Ron Shore 

 There is nothing else in the record to illuminate the jury's deliberations or to suggest that,
unlike Colburn, this is more than a preliminary question raised by the jury. Colburn held that this
type of question alone is insufficient to rebut the presumption that the jurors followed the instruction
not to consider parole in its deliberations and its final assessment of punishment. This situation is
not distinguishable from that addressed in Colburn. Accordingly, we overrule the contention of
error. 



Sufficiency of the Evidence

 Graham next contends the trial court erred in convicting him because the evidence was
legally and factually insufficient to support the conviction under state statutory and constitutional
requirements and also under federal constitutional rights. This contention of error is based on the
presumption that this Court would conclude his statement was improperly admitted into evidence
and thus would not be considered as proof of his guilt. In reviewing the legal sufficiency of the
evidence, we view the relevant evidence in the light most favorable to the verdict and look to see
whether a rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); see Johnson v. State, 23 S.W.3d
1, 7 (Tex. Crim. App. 2000). In our review, we must evaluate all the evidence in the record, both
direct and circumstantial, whether admissible or inadmissible. Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999). 

 In contrast, a factual sufficiency review dictates the evidence be viewed in a neutral light,
favoring neither party. Johnson, 23 S.W.3d at 7. In determining the factual sufficiency of the
evidence to establish the elements of the offense, we view all the evidence in a neutral light and set
aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly
wrong and unjust. Id.

 In this case, the conviction is supported by Graham's statement, by his plea of guilty, by his
stipulation to the evidence that he had committed the crime, and by his own testimony during the
course of the trial. We find the evidence both legally and factually sufficient to support the verdict.

 We affirm the judgment.



 Josh R. Morriss, III

 Chief Justice



CONCURRING OPINION


 The United States Supreme Court has concluded that Estes v. Texas, 381 U.S. 532 (1965),
did not announce a constitutional rule that all photographic, radio, and television coverage of
criminal trials is inherently a denial of due process. Chandler v. Florida, 449 U.S. 560 (1981). 
However, because no rule-making authority in Texas has expressly authorized such coverage in
criminal cases, trial courts should not permit it in those proceedings. As pointed out by the majority,
Tex. R. Civ. P. 18c provides for such coverage in civil cases, and Tex. R. App. P. 14.1 and 14.2
likewise authorize such coverage. But, these rules provide specific guidelines governing such
coverage in those respective proceedings. We have no corresponding guidelines governing
photographic, radio, and television coverage of criminal trials, and in the absence of such, trial courts
should not allow it, especially over a party's objection, as in this case. (3)

 Nevertheless, the United States Supreme Court stated in Chandler:

 [A] defendant has the right on review to show that the media's coverage of his
case-printed or broadcast-compromised the ability of the jury to judge him fairly. 
Alternatively, a defendant might show that broadcast coverage of his particular case
had an adverse impact on the trial participants sufficient to constitute a denial of due
process.

Chandler, 449 U.S. at 581.

 As no such showing was made in Chandler, neither was there in this case. For this reason,
I concur in the result. 



 Donald R. Ross

 Justice


Date Submitted: October 1, 2002

Date Decided: January 10, 2003


Publish


1. Graham is presently before this Court in two appeals. They are from convictions for
separate offenses of arson and are each enhanced by the same prior felony conviction. The jury
assessed identical punishments in each case.
2. In relevant part, the court found that, although a failure to rule, followed by a statement by
counsel that he had no objection to introduction of the evidence, normally waived the error, in that
case the trial court did explicitly choose to rule on the motion to suppress after the State rested. The
court found that, although unorthodox, this was adequate to preserve the complaint for appellate
review. This reasoning has recently been followed by the Corpus Christi Court of Appeals in
Morrison v. State, 71 S.W.3d 821, 826 (Tex. App.-Corpus Christi 2002, no pet.).
3. In Arnold v. State, 853 S.W.2d 543, 544 (Tex. Crim. App. 1993), the Texas Court of
Criminal Appeals held another civil rule of procedure applicable to criminal cases. If the same
application is made of Tex. R. Civ. P. 18c, the televising of the proceeding in this case was error
because that rule requires the consent of the parties for such televising and Graham clearly did not
consent.


v. State,
563 S.W.2d 606, 608 (Tex. Crim. App. [Panel Op.] 1978). In cases where there is independent
evidence of a burglary, the unexplained personal possession of recently stolen property may
constitute sufficient evidence to support a conviction. See Harris v. State, 656 S.W.2d 481, 483
(Tex. Crim. App. 1983); Dixon v. State, 43 S.W.3d 548, 552 (Tex. App.—Texarkana 2001, no pet.). 
Mere possession of stolen property does not give rise to a presumption of guilt, but, rather, it will
support an inference of guilt of the offense in which the property was stolen. Hardesty v. State, 656
S.W.2d 73, 76 (Tex. Crim. App. 1983). To warrant an inference of guilt based solely on the
possession of stolen property, it must be established that the possession was personal, recent, and
unexplained. Sutherlin v. State, 682 S.W.2d 546, 549 (Tex. Crim. App. 1984); Grant v. State, 566
S.W.2d 954, 956 (Tex. Crim. App. [Panel Op.] 1978). The inference of guilt is not conclusive,
however, and the sufficiency of the evidence must still be examined according to applicable
evidentiary standards of appellate review. Hardesty, 656 S.W.2d at 77. 
            Also, the possession must involve a distinct and conscious assertion of right to the property
by the defendant. Grant, 566 S.W.2d at 956. If the defendant offers an explanation for his or her
possession of the stolen property, the record must demonstrate the account is false or unreasonable. 
Adams v. State, 552 S.W.2d 812, 815 (Tex. Crim. App. 1977). Whether a defendant's explanation
for possession of recently stolen property is true or reasonable is a question of fact to be resolved by
the trier of fact. Dixon, 43 S.W.3d at 552.
            There is ample evidence to show that a burglary occurred at Norrell's home and several
firearms and numerous coins were stolen. The record also reflects that Norrell did not give anyone
permission to enter his home or take any of the stolen items.
            It is undisputed that Rollerson was in possession of coins stolen from Norrell's home the day
after the burglary. The evidence shows that Rollerson was attempting to sell the coins to Westside
Checking. This was a distinct and conscious assertion of right to the property by Rollerson. See
Tabor v. State, 88 S.W.3d 783, 787 (Tex. App.—Tyler 2002, no pet.). The only explanation offered
by Rollerson for his possession of the coins was that he had received them from "a friend." 
However, there is nothing in the record to indicate Rollerson gave the friend's name or any other
details about how he came into possession of the coins. 
            Whether the appellant's explanation is reasonable is an issue to be determined by the trier of
fact. The falsity of the explanation may be shown by circumstantial evidence. Adams, 552 S.W.2d
at 815. Evidence was presented that Rollerson told some acquaintances that he had some coins he
wanted to cash. Other evidence shows that Rollerson had previously exchanged some other coins
belonging to Norrell at a different store. The trial court's determination that Rollerson's sparse
explanation was false or unreasonable is not contradicted by the evidence.
            Viewed in the light most favorable to the verdict, the evidence showed that, just one day after
the burglary, Rollerson had possession of numerous coins stolen from Norrell's home. The evidence
also showed that Rollerson established a distinct and conscious assertion of right to those coins by
attempting to sell them. See Tabor, 88 S.W.3d at 787. Finally, the evidence showed that Norrell did
not give Rollerson permission to take or sell the coins. We hold that a rational trier of fact could
have found beyond a reasonable doubt that Rollerson burglarized Norrell's home based on his
personal, recent, and unexplained possession of Norrell's property. 
            Viewed in a neutral light, we find the evidence discussed above was strong enough to support
a finding of guilt beyond a reasonable doubt. Rollerson did not provide any compelling direct
evidence regarding how he obtained Norrell's coins. Rollerson's cross-examination of the State's
witnesses did not produce strong evidence that someone else committed the burglary. The trial court
was in the best position to judge the credibility of Rollerson's theory of the case. The record does
not reflect that a beyond-a-reasonable-doubt standard could not have been met. 
            Accordingly, we hold that the evidence presented at trial was both legally and factually
sufficient to support Rollerson's conviction for burglary of a habitation.
Theft of a Firearm
            A person commits the offense of theft if, without the effective consent of the owner, the
person appropriates property with the intent to deprive the owner of the property. Tex. Pen. Code
Ann. § 31.03(a). The record shows that firearms and coins were taken from Norrell's home without
his consent. As discussed above, the evidence is both legally and factually sufficient to show that
Rollerson was the person responsible for taking those items. Therefore, for the reasons already
discussed, we hold the evidence is both legally and factually sufficient to support Rollerson's
conviction for theft of a firearm.
Felon in Possession of a Firearm
            A person commits the offense of unlawful possession of a firearm if that person has been
convicted of a felony and possessed a firearm at any location other than the premises at which the
person lives. Tex. Pen. Code Ann. § 46.04(a)(2). Rollerson stipulated at trial that he had been
convicted of the felony offenses of burglary of a habitation and failure to stop and render aid May 19,
1998. We have already found the evidence to be both legally and factually sufficient to show that
Rollerson burglarized Norrell's home and stole a firearm. These actions necessarily entail that
Rollerson possessed a firearm at one point. Therefore, given that Rollerson stipulated he had a
felony conviction, we find the evidence legally and factually sufficient to support Rollerson's
conviction for the offense of unlawful possession of a firearm.
Deadly Weapon Finding Improper
            The trial court made an affirmative finding that Rollerson used and exhibited a firearm during
the commission of each offense or during the immediate flight therefrom. Rollerson challenges the
sufficiency of the evidence to support these findings.
            There is no evidence in the record that Rollerson carried a firearm into Norrell's home during
the burglary. The trial court appears to have based its findings solely on Rollerson's possession of
the firearms stolen during the burglary. To review evidence for legal sufficiency, this Court must
view the evidence in the light most favorable to the verdict and determine if a rational trier of fact
could have found the essential elements of the offense beyond a reasonable doubt. See Narvaiz v.
State, 840 S.W.2d 415, 423 (Tex. Crim. App. 1992). When applied to the special issue regarding
the use or exhibition of a deadly weapon during the commission of a felony offense, the question
facing this Court is whether a rational trier of fact could find beyond a reasonable doubt that the mere
possession of firearms facilitated the associated felony. Gale v. State, 998 S.W.2d 221, 223–24
(Tex. Crim. App. 1999). 
            The Texas Court of Criminal Appeals has said, "'[U]sed . . . a deadly weapon' during the
commission of the offense means that the deadly weapon was employed or utilized in order to
achieve its purpose. Whereas 'exhibited a deadly weapon' means that the weapon was consciously
shown or displayed during the commission of the offense." Patterson v. State, 769 S.W.2d 938, 941
(Tex. Crim. App. 1989). Even simple possession of a firearm may be sufficient to support a deadly
weapon finding if such possession facilitates the associated felony. Id. at 941. 
            In Patterson, the appellant was convicted of possession of a controlled substance. A search
team executing a search warrant at a private residence found the appellant sitting on a couch in the
living room. A loaded .45 caliber revolver was found by the arresting officer concealed between the
appellant's leg and the end of the sofa. The officer also found the appellant's wallet and a pistol
"boot" holding ammunition for a .45 caliber weapon on a table next to the couch. Id. at 939. The
court found there was sufficient evidence to uphold the jury's finding that he used or exhibited a
deadly weapon in the course of possessing the contraband. Id. at 942. The court approved the
intermediate court's determination "that a rational trier of fact could find that appellant 'used' the
firearm during the commission of the felony offense of possessing the contraband, in a sense that the
firearm protected and facilitated appellant's care, custody, and management of the contraband." Id.            The Texas Court of Criminal Appeals has held that, where the associated felony is unlawful
possession of a firearm by a felon, an affirmative deadly weapon finding cannot be based solely on
the defendant's possession of the firearm. Narron v. State, 835 S.W.2d 642 (Tex. Crim. App. 1992);
Ex parte Petty, 833 S.W.2d 145 (Tex. Crim. App. 1992). As noted, the trial court's finding was
based solely on Rollerson's mere possession of a firearm. Therefore, the affirmative deadly weapon
finding pertaining to Rollerson's conviction for the offense of unlawful possession of a firearm by
a felon is improper.
            The deadly weapon findings pertaining to the burglary and theft convictions are also
improper. Unlike other burglary cases, there is no evidence that Rollerson handled the firearm in
such a manner that would indicate he intended to use it for some purpose other than simply stealing
it. In Gregg v. State, 820 S.W.2d 191 (Tex. App.—Fort Worth 1991, no pet.), during the burglary,
the appellant found a shotgun in the closet of the master bedroom of the complainant's home, loaded
the gun, and placed it on top of the bed in that room. The court held the appellant's actions were
sufficient to support a deadly weapon finding because, 
Certainly he would not have gone to the trouble to load the gun and place it in such
an accessible position had he simply intended to steal the gun; rather, the gun was
"used" for the purpose of effectuating this burglary in that the appellant could have
fired it upon being surprised or caught in the home by the complainant or a family
member, the police, or anyone else. Although he was not in actual physical
possession of the shotgun at the time of his arrest on the premises, appellant's act of
finding, loading, and moving the gun, constituted sufficient control and possession
of the gun as to support a finding that he "used" the gun during the commission of the
offense.
Id. at 193. The clear implication from Gregg is that, if the defendant had "simply intended to steal
the gun" without the other factors of loading and moving it, a finding that the gun was "used" could
not have been sustained. 
            In contrast, here there is no evidence Rollerson loaded the firearm, or positioned it in such
a way that he could use it against someone if he was surprised. The record shows that no one was
home when Rollerson committed the burglary and theft. Rollerson was not confronted by law
enforcement officials until the next day, and he did not possess a firearm at that time. Rollerson's
possession of the firearm did not facilitate the burglary, as that crime would have been complete
whether or not he found and possessed the weapon. Nor did the firearm facilitate his flight from the
burglary, as he was not confronted by anyone, either civilian or law enforcement officials. His
possession of the firearm did not facilitate the theft, as it was his very act of possession that
constituted the crime. 
            As the court stated in Petty, "In the present case, the weapon was not 'used' in furtherance of
any collateral felony. Thus, because there was no associated felony facilitated by the Applicant's
possession of the deadly weapon, the holding in Patterson dictates that the affirmative finding of the
use of a deadly weapon was error." Petty, 833 S.W.2d at 145–46. The same is true here. Therefore,
the trial court erred by entering an affirmative deadly weapon finding with respect to the burglary
and theft convictions.
            We affirm the convictions, but reform the judgment to delete the affirmative deadly weapon
findings with respect to all three convictions.
 

                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          March 24, 2006
Date Decided:             May 17, 2006

Publish