

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

### NO. 02-17-00027-CR

COLIN LANE CROSBY                                                    APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

----------

### FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY
### TRIAL COURT NO. 57,038-C

----------

## MEMORANDUM OPINION[1]

----------

A jury convicted appellant Colin Lane Crosby of evading arrest or detention with a vehicle and assessed his punishment at six years in the penitentiary, and the trial court sentenced Crosby accordingly. In three points, Crosby asserts that (1) the trial court erred when it failed to strike for cause venire members who took an absolute position on the credibility of police officers as witnesses, (2) the trial

---

[1]*See* Tex. R. App. P. 47.4.

court erred by preventing him from presenting a defensive theory, and (3) the trial court erred by not instructing the jury on the lesser-included offense of fleeing an officer with a motor vehicle. We affirm.

## Evidence

Officer Ruddy Hutson observed Crosby driving 66 miles per hour in a 60-miles-per-hour zone—a speeding violation. Officer Hutson followed Crosby and turned on his overhead lights to initiate a traffic stop. Crosby continued to speed, so Officer Hutson activated his siren several times but to no avail; Crosby drove past nine different well-lit locations where he could have safely stopped his car.

Eventually Crosby pulled into a Sleepwell Motel parking lot and parked. When Officer Hutson instructed Crosby to get out of his car, Crosby feigned that he could not because his car door was broken. So Officer Huston turned his attention to the passenger in Crosby's vehicle and told Crosby to stay in his car, but once Officer Hutson attended to the passenger, Crosby got out and went to a motel-room door. The door, however, was locked. Although initially recalcitrant, Crosby eventually complied with Officer Hutson's orders and was arrested.

## The trial court did not abuse its discretion by not striking three venire members for cause

In his first point, Crosby argues that the trial court abused its discretion when it failed to strike for cause three venire members—Glass, Vines, and Forrester—who, according to Crosby, took an absolute position on police officers' credibility as witnesses. We disagree.

### *Standard of review*

When reviewing a trial court's decision to deny a challenge for cause, we review the entire record to see if sufficient evidence supports the ruling. *Davis v. State*, 329 S.W.3d 798, 807 (Tex. Crim. App. 2010), *cert. denied*, 565 U.S. 830 (2011). Because the trial court is in the best position to evaluate the venire members' demeanor, we review a trial court's challenge-for-cause decisions for a clear abuse of discretion. *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992), *cert. denied*, 509 U.S. 926 (1993); *Fierro v. State*, 969 S.W.2d 51, 57 (Tex. App.—Austin 1998, no pet.). A trial court abuses its discretion when its decision is so clearly wrong as to lie outside the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). Further, when the venire member's answers are vacillating, unclear or contradictory, we give trial courts particular deference because they are able to consider important factors—such as demeanor and tone of voice—that a cold record does not reveal. *King v. State*, 29 S.W.3d 556, 568 (Tex. Crim. App. 2000); *Banda v. State*, 890 S.W.2d 42, 54 (Tex. Crim. App. 1994), *cert. denied*, 515 U.S. 1105 (1995).

A party may challenge venire members for cause if they have a bias in favor of or a prejudice against the defendant. Tex. Code Crim. Pro. art. 35.16(a)(9) (West 2006). Venire members are challengeable for cause if they cannot impartially judge witnesses' credibility, which means only that they must be open-minded and persuadable, "with no *extreme* or *absolute* positions

regarding the credibility of any witness." *Ladd v. State*, 3 S.W.3d 547, 560 (Tex. Crim. App. 1999) (citing *Jones v. State*, 982 S.W.2d 386, 389 (Tex. Crim. App. 1998), *cert. denied*, 528 U.S. 985 (1999)), *cert. denied*, 529 U.S. 1070 (2000). Given that "'complete impartiality cannot be realized as long as human beings are called upon to be jurors[,]'" venire members cannot be challenged for cause "simply because they would give certain classes of witnesses a slight edge in terms of credibility." *Id.* (quoting *Jones*, 982 S.W.2d at 389).

### *Discussion*

Crosby focuses strictly on defense counsel's voir dire. But the record shows that both the prosecutor and defense counsel extensively addressed the topic of police officers as witnesses. We first present the prosecutor's voir dire:

> [PROSECUTOR]: [N]o one's asking you to check your common sense at the door. I think Ms. Boyd did a really good job of explaining some things that she'd look for as far as demeanor goes and determining whether or not somebody is deserving of credibility.
>
> And along those same lines, there may be a police officer or two who testifies as witnesses. And the fact is, you must evaluate a police officer's credibility the same way as you would all other witnesses. Now, once a police officer gets on the stand and begins to testify, then you can start to take into account their training and experience, but we ask that you not prejudge the officers ahead of time. And I'll go ahead and spend a little bit of time on this question because it's one that I've encountered some difficulty with. And I would just like to state that there's a difference between respecting an officer's authority out on the street and then agreeing not to prejudge them as being inherently more credible or truthful when they testify. Does that make more sense to everyone?
>
> You can still respect the officer's badge when you're out on the street while also agreeing not to prejudge them as being inherently more truthful or credible when they testify on the witness

4

stand. All that we ask is that you withhold judgment on their credibility until you hear them begin to testify. And I—I think that's—that's a fair statement.

Mr. Buchanan, if you would go ahead and stand up. Would you agree—would you agree w[ith] me that it's better to hear somebody's story first before you decide whether or not you want to believe them?

VENIREMAN BUCHANAN: Yes.

[PROSECUTOR]: And that's sort of the same concept that I'm asking y'all to apply here is just wait until you hear an officer's story before deciding to judge them as more credible or potentially less credible. Thank you, sir.

So with that in mind, Mr. Sterling, would you be able to agree to evaluate an officer's credibility the same way that you would any other witness?

VENIREMAN STERLING: Yes.

[PROSECUTOR]: Okay. So you would agree not to prejudge them as being inherently more credible or less credible?

VENIREMAN STERLING: Uh-huh.

[PROSECUTOR]: All right. Everybody else on the first row? All right. How about the second row, would you be able to hold officers to the same standard as—as every other witness and wait and hear what they have to say before you decide whether or not to believe them? And how about on the third row? Can we all agree to not prejudge an officer's credibility or lack thereof before they testify? Does that apply to you as well, Mr. Fondren?

VENIREMAN FONDREN: Yes, sir.

[PROSECUTOR]: And you too, Mr. Penney?

VENIREMAN PENNEY: Yes.

[PROSECUTOR]: And without naming names, would it be fair say that you've experienced your share of interactions with good cops, bad cops, sloppy cops?

VENIREMAN PENNEY: Yes, sir.

[PROSECUTOR]: Okay. And you've kind of—they come in all stages, fair to say?

VENIREMAN PENNEY: Fair.

[PROSECUTOR]: Okay. And how about on the fourth row? Is there anybody who would inherently consider a police officer to be more truthful just by nature of the fact that they have a badge? Okay. I'll go over to the left side here, first row. Same question to y'all, can everybody here agree to start off a police officer with the same level of credibility as they would any other witness? I'll go ahead and—second row on the left side, everybody can agree to that as well? All right. The third row, Mr. Townsend?

VENIREMAN TOWNSEND: Yes, sir.

[PROSECUTOR]: You will be our guinea pig. Would you be able to agree to that as well?

VENIREMAN TOWNSEND: Sure, absolutely.

[PROSECUTOR]: Everybody else on the third row too? All right. And how about on the fourth row? Is everybody on the fourth row able to agree not to prejudge an officer's credibility level prior to them testifying? All right.

So I guess by that same token, is there anybody here who through whatever experiences or actions they or their families may have that would have an inherently negative view of a police officer? So I'll kind of flip the situation, somebody who says, you know what, just by the nature of them being police officers, I kind of think they're less credible than any other witnesses? Are there anybody out—is there anybody out there like that? And again, if that happens to be you, you can go ahead, this is your time, just stand up and say it. Nobody's going to be judging you for that because like I said we're here just asking you to be honest in all of the questions that we put to you.

Is there anybody here who had or has a family member or close friend that's had a negative experience with the District Attorney's Office? I don't think I see any hands. Okay. So that covers police officers as potential witnesses.

6

We see from the prosecutor's voir dire that he set out what the law expected of jurors when evaluating police officers. We also see that Glass, Vines, and Forrester did not speak up to express any disagreement with those expectations.

When it was defense counsel's turn, however, Glass, Vines, and Forrester acknowledged that they would start an officer out with a "little bit more" credibility. Defense counsel's voir dire went as follows:

> [DEFENSE COUNSEL]: Thank you, Your Honor. All right. Let's move on down the list. So [the prosecutor] touched on this earlier, but the law says that you have to start every witness off at the same—with the same level of credibility, basically regardless of whether or not they wear a uniform, okay? Before they get on the stand, you have to start them off at the same level of credibility, so I'm going to ask a few of you this. Would you agree or disagree with this statement? I put it up there on the board so you could see it. I would stop—start an officer off with a little bit more credibility just because they are a police officer. And I'm going to ask whether you disagree or agree with this statement. Does anybody have any question about the statement—that statement that I'm asking you about just so there's no confusion? Okay. We'll start with Ms. Chapa, right?
>
> VENIREMAN CHAPA: Uh-huh.
>
> [DEFENSE COUNSEL]: Okay. Would you agree or disagree with that statement?
>
> VENIREMAN CHAPA: Disagree.
>
> [DEFENSE COUNSEL]: Okay. Mr. Glass, would you agree or disagree with that statement?
>
> VENIREMAN GLASS: Agree.
>
> [DEFENSE COUNSEL]: Agree with the statement? And you understand this is before—that the officer testifies and you would be instructed that—
>
> VENIREMAN GLASS: Yeah.

7

[DEFENSE COUNSEL]: —and you would be instructed that you can't -- just because somebody wears a uniform, you have to start all officers off at the same level of credibility?

VENIREMAN GLASS: Yes.

[DEFENSE COUNSEL]: You'd still say that you agree?

VENIREMAN GLASS: Yeah, just because I know some law enforcement people that—I know that doesn't—

[DEFENSE COUNSEL]: Okay.

VENIREMAN GLASS: —go with everybody, but that's just my opinion.

[DEFENSE COUNSEL]: Yeah. And don't let—and that's exactly—that's a great answer in—in that, you know, if you feel like this is—well, let me ask you and don't let me put words in your mouth, so correct me here if I misstate it, but you couldn't sit your feelings aside, if an officer testified, you'd start them off with a little bit more credibility, you could not set that feeling aside even if instructed by the Judge to?

VENIREMAN GLASS: Well, yeah, but you're asking me a question and I'm telling you that I agree with that statement.

[DEFENSE COUNSEL]: Okay. So all right. So how about this: If you were in—would—would your feelings—you said you know some police officers.

VENIREMAN GLASS: Yeah.

[DEFENSE COUNSEL]: And you like them and you think they're trustworthy folks, the ones you know, right?

VENIREMAN GLASS: Yeah.

[DEFENSE COUNSEL]: And would that influence your decision even a little bit before—and you don't know—and let me correct myself. You don't know any of the police officers?

VENIREMAN GLASS: I don't know any of the ones [that are] listed, no.

8

[DEFENSE COUNSEL]: All right. And—and would that at all influence your decision as to whether or not to trust them?

VENIREMAN GLASS: No.

[DEFENSE COUNSEL]: Okay. All right. Does anybody—does anybody else agree with this statement? Does anybody agree with this statement? Ms. Wood? Thank you. Anybody else agree on the right side with the statement? Okay. Mr. Vines, is it?

VENIREMAN VINES: Yes.

[DEFENSE COUNSEL]: Would you say you would start an officer off with a little bit more credibility simply because they're a police officer and for no other reason before they testify?

VENIREMAN VINES: Yes.

[DEFENSE COUNSEL]: Okay. Ms. Forrester?

VENIREMAN FORRESTER: Yes.

[DEFENSE COUNSEL]: Would—even though the Court's going to instruct you just because somebody wears a uniform that you can't give them any more credibility, you would say that based on your personal experience, you would start an officer off with a little bit more credibility just because they're a police officer?

VENIREMAN FORRESTER: Yes.

[DEFENSE COUNSEL]: Okay. Thank [you], Ms. Forrester. Anybody else on the right side? All right. Ms. Burns, right?

VENIREMAN BURNS: Yes.

[DEFENSE COUNSEL]: Ms. Burns, would you stand since you're not on the front row? Thank you. The same question. Based on your personal experience, would you start an officer off with a little bit more credibility just because they are a police officer even though the Court's going to tell you that you can't use their uniform as evidence of credibility?

VENIREMAN BURNS: Yes.

9

[DEFENSE COUNSEL]: Okay. And thank you. And Mr. Dickerson, same question?

VENIREMAN DICKERSON: Yes, sir. I agree.

[DEFENSE COUNSEL]: Okay. Thank you. I appreciate your honesty. Anybody else on the right side? Okay. Ms. . . . Jackson in the back, Ms. Jackson?

VENIREMAN JACKSON: I agree because I was raised with two police officers in my home.

[DEFENSE COUNSEL]: All right. Okay. So you would say that you would not—you would start an officer off with a little bit more credibility just because they're a police officer?

VENIREMAN JACKSON: (Moving head up and down.)

[DEFENSE COUNSEL]: Thank you. I appreciate your honesty. Anybody else on the back row? Okay. I'm going to ask it again. Anyone else on the left side agree with that statement? Okay. Thank y'all for your honesty. I appreciate it. All right.

Venire members are not challengeable for cause because they would tend to believe a police officer or a doctor "slightly more" than others. *Ladd*, 3 S.W.3d at 560. Rather, venire members are challengeable for cause under article 35.16(a)(9) if they cannot impartially judge witnesses' credibility, the flip side of which means only that they must be open-minded, persuadable, and have no extreme or absolute position regarding any witness's credibility. Tex. Code Crim. Proc. Ann. art. 35.16(a)(9); *Ladd*, 3 S.W.3d at 560.

We see no legally significant distinction between the "slightly more" in *Ladd* and the "little bit more" that was articulated in this case.

Crosby also contends that *Ladd* is factually distinguishable because the venire member there stated that he would tend to believe police officers and

10

doctors if they were testifying about matters within their expertise; he also stated that he would not automatically believe police officers and doctors and would listen to all the evidence before making up his mind about the facts. *Id.* at 559–60. We disagree with Crosby's attempt to distance himself from *Ladd*'s analysis and holding.

By not disagreeing with the prosecutor during his voir dire, Glass, Vines, and Forrester effectively gave conflicting answers. When venire members give conflicting answers, we defer to the trial court's determination. *See King*, 29 S.W.3d at 568. Additionally, a "little bit more" is not an extreme or absolute position and simply means that the venire members remain open to having the evidence persuade them otherwise. *See Ladd*, 3 S.W.3d at 560.

We overrule Crosby's first point.

**Crosby was not prevented from presenting a defense**

Crosby argues in his second point that the trial court erred when it prevented him from cross-examining Officer Hutson about his motive for charging Crosby with a felony instead of a misdemeanor and thereby prevented him from presenting a defensive theory. Specifically, he contends that "[t]he thrust of [his] offer [of proof] was that the State bound [him] over on a trumped-up felony charge to seize [his] vehicle for financial gain when the arresting officer himself testified that [Crosby] committed the misdemeanor offense of fleeing." Tex. Penal Code Ann. § 38.04 (West 2016) (evading arrest); Tex. Transp. Code Ann. § 545.421 (West 2011) (fleeing an officer). Crosby contends that the seizure laws

11

provided a financial incentive to charge him with a felony instead of a misdemeanor.

### *Standard of review*

We review a trial court's evidentiary rulings for an abuse of discretion. *See Montgomery*, 810 S.W.2d at 391. Furthermore, if the ruling is supported under any legal theory applicable to the case, we will uphold it. *See Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).

Rulings excluding evidence might rise to a constitutional level in two distinct instances: (1) when there is a state evidentiary rule that categorically and arbitrarily prohibits a defendant from offering otherwise relevant evidence, and (2) when a trial court's clearly erroneous ruling excluding otherwise relevant, reliable evidence that forms such a vital portion of the defendant's case that excluding it effectively precludes him from presenting a defense. *Wiley v. State*, 74 S.W.3d 399, 405 (Tex. Crim. App.), *cert. denied*, 537 U.S. 949 (2002). "In the first category, the constitutional infirmity is in the arbitrary rule of evidence itself." *Id.* "In the second category, the rule itself is appropriate, but the trial court erroneously applies the rule to exclude admissible evidence to such an extent that it effectively prevents the defendant from presenting his defensive theory. In other words, the erroneous ruling goes to the heart of the defense." *Id.* (footnote omitted).

## *Discussion*

Crosby does not argue that any evidentiary rule categorically and arbitrarily prohibited him from offering relevant evidence, so we focus only on the second category: Crosby's argument that the trial court's erroneous ruling excluded otherwise relevant, reliable evidence that formed a vital portion of his case and effectively precluded him from presenting a defense. *See id.*

Outside the jury's presence, Crosby's counsel argued that the police had seized Crosby's vehicle. He was not able to say whether the police had sold it. But when given an opportunity to present his offer of proof, Crosby's counsel limited it to Officer Hutson's admission that he could have charged Crosby with the misdemeanor offense of using a motor vehicle to flee or attempt to elude a police officer under section 545.421 of the transportation code. Crosby's counsel went no further.

He never asked Officer Hutson why he charged Crosby with the felony instead of with the misdemeanor. He never asked whether Officer Hutson was familiar with the seizure laws. He never asked whether the police actually seized Crosby's car. And he never asked whether the possibility of seizing Crosby's car had any bearing on Officer Hutson's decision to charge him with a felony.

Because nothing in the offer of proof supports the allegation that Officer Hutson's decision to arrest Crosby for the felony was to seize Crosby's vehicle, we hold that the trial court did not err. The offer of proof failed to show that Officer Hutson had an ulterior motive to arrest Crosby for one offense as

13

opposed to the other. The proffered evidence was not relevant and was properly excluded. Tex. R. Evid. 401, 402. Because Crosby has not shown that the trial court misapplied the law when excluding the proffered evidence, he cannot show that he was improperly prevented from presenting a defense. *See Wiley*, 74 S.W.3d at 405.

Crosby next contends that after he made his offer of proof, on redirect the State opened the door to Officer Hutson's motivation Shortly after Crosby's offer, the record shows the following:

BY [PROSECUTOR]:

Q. Okay. Officer Hutson, if I could ask you to recall to the best of your recollection some of the previous testimony in regard[ ] to what defense counsel said, specifically that the Defendant didn't try to get away. Do you recall those statements?

A. Yes, he didn't try to get away.

Q. Okay. Now, after he exited the vehicle, what did the Defendant try and do?

A. He tried to enter a hotel room without—during the felony stop, he tried to leave the scene by entering a hotel room.

Q. Was he continuing to, I guess, evade you at that point?

A. Yes, sir.

Q. So it wasn't until the Defendant realized that the door was locked that he eventually came into compliance?

A. Correct.

Q. And what would you have to do if the door was unlocked and the defendant walked in?

A. Since this was a felony, we'd have to go in after him.

14

Q. You would have to continue to pursue him?

A. Yes.

This line of questioning shows that Crosby fled both in his vehicle and, once he stopped his vehicle, on foot.

Moments later, the prosecutor asked Officer Hutson point blank: "[W]hy did you decide to charge this Defendant with evading in a vehicle?" Officer Hutson answered:

> Because he failed to stop and he—I felt like he was evading me by not stopping, by traveling .7 miles while my sirens and emergency lights were going off and also when he exited the vehicle, he tried to enter a motel room against officers' commands when we had him at taser and gunpoint.

Crosby contended at trial that this exchange opened the door to questions about the officer's motivations for charging the felony instead of the misdemeanor.

The prosecutor again argued that the misdemeanor was not a lesser-included offense and so Crosby's line of questioning was irrelevant. The trial court sustained the prosecutor's objection. Because Crosby's offer of proof contained nothing showing that Officer Hutson was in any way motivated by the seizure laws or, for that matter, that the seizure laws even applied, Crosby cannot show that he was prevented from showing a defense. *See id.*

We overrule Crosby's second point.

**Fleeing an officer is not a lesser-included offense of evading arrest or detention**

In his third point, Crosby maintains that the trial court erred when it failed to instruct the jury that fleeing is a lesser-included offense of evading arrest in a motor vehicle. Because binding authority says otherwise, we disagree.

### *Standard of review*

The code of criminal procedure provides that an offense is a lesser-included offense if "it is established by proof of the same or less than all the facts required to establish the commission of the offense charged." Tex. Code Crim. Proc. Ann. art. 37.09(1) (West 2006).

The first step of the analysis asks whether the lesser-included offense is included within the proof necessary to show the charged offense. *Hall v. State*, 225 S.W.3d 524, 531 (Tex. Crim. App. 2007). This is a question of law and does not depend on the evidence to be produced at trial. *Id.* at 535. In *Hall*, the court of criminal appeals adopted the cognate-pleadings approach for this step: "the elements and the facts alleged in the charging instrument are used to find lesser-included offenses." *Id.*

The court of criminal appeals reaffirmed that principle in *Ex parte Watson*, where it explained that an offense is a lesser-included offense of another offense if the indictment for the greater-inclusive offense either alleges all the elements of the lesser-included offense or alleges elements plus facts (including descriptive averments, such as non-statutory manner and means, that are alleged for notice

16

purposes) from which all the lesser-included offense's elements may be deduced. 306 S.W.3d 259, 273 (Tex. Crim. App. 2009) (op. on reh'g); *see also Hall*, 225 S.W.3d at 535.

But language from *Hall* and *Watson* stating that an element of a lesser-included offense does not have to be alleged if it can be deduced from the indictment's language caused some confusion. *Rice v. State*, 333 S.W.3d 140, 144 (Tex. Crim. App. 2011). In *McKithan v. State*, the court aimed to clarify that language by explaining that it is not to be read too broadly because it was essentially approving the functional-equivalence concept, which requires courts to examine the lesser-included offense's elements and decide whether they are functionally the same or less than those required to prove the charged offense. 324 S.W.3d 582, 588 (Tex. Crim. App. 2010) (citing *Farrakhan v. State*, 247 S.W.3d 720, 722-23 (Tex. Crim. App. 2008)); *see Rice*, 333 S.W.3d at 144–45.

The second step requires evaluating the evidence to determine whether there is some evidence that would permit a rational jury to find that the defendant committed only the lesser offense and not the greater. *Hall*, 225 S.W.3d at 536. The evidence must show that the lesser-included offense is a rational, valid alternative to the charged offense. *Id.*

### *Discussion*

For the offense of evading arrest or detention, the State alleged that Crosby "did then and there, while using a vehicle, intentionally flee from Ruddy

17

Hutson, a person the defendant knew was a peace officer who was attempting lawfully to arrest or detain the defendant." This follows the statutory definition of evading arrest or detention while using a vehicle: "A person commits an offense if he intentionally flees from a person he knows is a peace officer . . . attempting lawfully to arrest or detain him," and "the actor uses a vehicle . . . while the actor is in flight . . . ." Tex. Penal Code Ann. § 38.04(a), (b)(1)(B).

In contrast, for the less-serious offense of fleeing or attempting to elude a police officer, the transportation code provides: "A person commits an offense if the person operates a motor vehicle and wilfully fails or refuses to bring the vehicle to a stop or flees, or attempts to elude, a pursuing police vehicle when given a visual or audible signal to bring the vehicle to a stop." Tex. Transp. Code Ann. § 545.421(a). Subsection (b) further provides, "A signal under this section that is given by a police officer pursuing a vehicle may be by hand, voice, emergency light, or siren." *Id.* § 545.421(b). It continues, "The officer giving the signal must be in uniform and prominently display the officer's badge of office." *Id.* It concludes, "The officer's vehicle must bear the insignia of a law enforcement agency, regardless of whether the vehicle displays an emergency light." *Id.*

### *The first step*

In *Farrakhan v. State*, the State alleged that the defendant "unlawfully, intentionally fle[d] from [the officer], . . . a peace officer employed by HOUSTON POLICE DEPARTMENT, lawfully attempting to DETAIN [the defendant], and [the

18

defendant] knew that [the officer] was a peace officer attempting to DETAIN [the defendant], and [the defendant] used a motor vehicle while he was in flight." 263 S.W.3d 124, 138 (Tex. App.—Houston [1st Dist.] 2006), *aff'd*, 247 S.W.3d 720 (Tex. Crim. App. 2008). This is functionally identical to Crosby's indictment, that is, it tracks the statutory elements, identifies the officer and the defendant, and otherwise adds nothing factually. Under these circumstances, the court of criminal appeals held that fleeing was not a lesser-included offense of evading detention with a motor vehicle. *Farrakhan*, 247 S.W.3d at 724. For our purposes, *Farrakhan* is controlling. Crosby cannot, therefore, show that fleeing is a lesser-include offense in his case.

### *The second step*

Because Crosby did not satisfy the first step, whether he met the second step is moot, so we need not address it. *See* Tex. R. App. P. 47.1; *Peavy v. State*, 248 S.W.3d 455, 469 (Tex. App.—Austin 2008, pet. ref'd).

### *Additional contention*

Crosby asks us to further modify the first step, but we are bound to follow higher court authority. *See State ex rel. Healey v. McMeans*, 884 S.W.2d 772, 774 (Tex. Crim. App. 1994) (courts must follow binding precedent from court of superior jurisdiction).

We overrule Crosby's third point.[2]

---

[2]The crux of Crosby's overall complaint is that Officer Hutson could have arrested him for a misdemeanor, the State similarly could have charged him with

19

## *Conclusion*

Having overruled Crosby's three points, we affirm the trial court's judgment.


/s/ Elizabeth Kerr
ELIZABETH KERR
JUSTICE

PANEL:  SUDDERTH, C.J.; GABRIEL and KERR, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  March 8, 2017

---

a misdemeanor, the trial court could have submitted the misdemeanor in the jury charge, and the jury might have, if given the opportunity, convicted him only of the misdemeanor. But even if Officer Hutson had arrested Crosby for the misdemeanor, Crosby has not cited us any authority for the proposition that the prosecutor would have been bound by the arresting officer's decision; how to charge a defendant is a question of prosecutorial discretion. *See Crutsinger v. State*, 206 S.W.3d 607, 612 (Tex. Crim. App.), *cert. denied*, 549 U.S. 1098 (2006). A defendant's history is one factor that prosecutors weigh when employing their discretion. *See id.* We note that during the punishment trial, the State proved that Crosby had two prior state jail felonies and eleven prior misdemeanor convictions. We are not privy to the reasons the State pursued the felony and not the misdemeanor, but Crosby's criminal history potentially played a factor. In the end, though, and for the reasons stated in this opinion, Crosby was not entitled to a charge on the misdemeanor as it was neither the charged offense nor a lesser-included offense of the charged offense.